750 A.2d 136 (2000)
330 N.J. Super. 473
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
BRIDGE VIEW BANK, Defendant-Respondent, and
Niyear Applewhite and Asta Funding, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 2000.
Decided May 4, 2000.
Robert J. Triffin, plaintiff-appellant, pro se.
Nylema Nabbie, Newark, for defendant-respondent (Schepisi & McLaughlin, attorneys, Englwd. Cliffs; Gary S. Newman, Elmwood Park, on the brief).
Before Judges PETRELLA and COBURN.
*137 The opinion of the court was delivered by COBURN, J.A.D.
The dispositive issue on this appeal is whether under the Uniform Commercial Code the assignee of a dishonored check has standing as against the payor bank to enforce the statutory liability created by N.J.S.A. 12A:4-302 when the bank misses the midnight deadline of N.J.S.A. 12A:4-104 and 12A:4-301 for returning or dishonoring the check. We hold that an assignee who purchases the check with notice of the dishonor lacks standing to bring the action.
Plaintiff, Robert J. Triffin, filed a small claims action in the Special Civil Part against defendants Bridge View Bank ("BVB"), Niyear Applewhite (who was never served), and Asta Funding, Inc. ("Asta") to recover on a document purporting to be a check issued by Asta on its BVB account. During trial, plaintiff voluntarily dismissed his claim against Asta and proceeded only as against BVB.
The evidence presented during the trial established the following facts. Someone unknown created a forged document purporting to be a $1,000 check of Asta, drawn against its account with BVB, and payable to the order of Niyear Applewhite. The check, which was dated February 12, 1998, and endorsed with the name "Niyear Applewhite," was deposited for collection by Blake Corporation d/b/a United Check Cashing ("United") in its account with Chase Manhattan Bank on February 13, 1998. The check was presented for payment to BVB no later than February 16, 1998. In its brief, BVB concedes that it "presented a copy [of the check] to Asta prior to payment. When Asta received the fake check with its statement they called BVB, informed BVB of the fraud and instructed BVB to stop payment to Chase." The uncontradicted evidence from Asta was that the earliest it could have received the check in a statement from BVB was at the end of February. According to plaintiff's complaint, BVB received the check on February 16, 1998, and dishonored the check by marking it "Payment Stopped" on March 17, 1998. BVB's letter of January 25, 1999, addressed to the court in response to plaintiff's demand for discovery, implicitly concedes the truth of those assertions:
Information sought by Plaintiff in his discovery request is the very same information that is contained by Plaintiff in his complaint. This is, Plaintiff seeks information from Defendant as to when the allegedly dishonored check was received. Plaintiff also seeks information as to how the check was dishonored and how any and all parties were informed of the fact that the check was going to be dishonored. However, a review of Plaintiff's complaint will reveal that the specific information sought by Plaintiff is already contained in his complaint and is specifically alleged.
Although this letter was not placed in evidence during the trial, it merely confirmed what the evidence otherwise showed, namely that BVB received the check on February 16 and did not dishonor and return it until March 17, 1998.
On November 10, 1998, plaintiff purchased the dishonored check for $197.50 by written assignment from United. He then filed this action. No party introduced any evidence respecting the details of the alleged transaction between Applewhite and United other than the information reflected by the check itself.
Plaintiff contends that he was entitled to judgment under N.J.S.A. 12A:4-302, which reads as follows:
a. If an item is presented to and received by a payor bank, the bank is accountable for the amount of:
(1) a demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the *138 depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
(2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.
b. The liability of a payor bank to pay an item pursuant to subsection a. of this section is subject to defenses based on breach of a presentment warranty (12A:4-208) or proof that the person seeking enforcement of the liability presented or transferred the item for the purpose of defrauding the payor bank.

[Emphasis added.]
Under that section of the Code, BVB, the payor bank, is presumptively accountable for the check "whether properly payable or not" if it fails to return the check within the midnight deadline referred to in the statute. Since it received the check on February 16, 1998, and did not return it until March 17, 1998, there was a violation of the midnight deadline.[1]See N.J.S.A. 12A:4-104 and 12A:4-301. BVB produced no evidence regarding the details of the negotiation of the check by United that might have established that United or plaintiff breached the presentment warranties of N.J.S.A. 12A:4-208 or presented the check for the purpose of defrauding the payor bank. Instead, BVB argues that plaintiff had that burden of proof. We disagree. In Dienco, Inc. v.. Security National Bank, 221 N.J.Super. 438, 534 A.2d 1035 (App.Div.1987), we resolved the issue against a payor bank that had violated the midnight deadline of N.J.S.A. 12A:4-302, holding that "[s]ince no valid defense to payment of the check has been shown by [the payor bank], its retention thereof beyond the foregoing deadline is a further reason why [it] is answerable for payment." Id. at 442, 534 A.2d 1035. Therefore, BVB was not entitled to judgment on the theory that the evidence proved the statutory defenses.
Dienco, Inc., supra, did not involve, as does this case, an action by an assignee who received the check by assignment with notice that the check had already been dishonored, however late.
Although the dispositive issue is one of first impression in this state, it has been resolved elsewhere in favor of the payor bank. Lawyers Title Ins. Corp. v. United American Bank of Memphis, 21 F.Supp.2d 785 (W.D.Tenn.1998); American Title Ins. Co. v. Burke & Herbert Bank & Trust Co., 813 F.Supp. 423 (E.D.Va.1993), aff'd o.b., 25 F.3d 1038 (4th Cir.1994); 7 Ronald A. Anderson, Uniform Commercial Code, § 4-302:31 at 231 (3d ed., 1995 rev.). Those authorities adopt the position that when the payor bank has dishonored a check after the midnight deadline, an assignee of the dishonored check may not enforce the statutory liability created by § 4-302, the benefits of which are intended solely for the payee, others who may have received the check before dishonor, and collecting banks. We agree with the following reasoning of the court in American Title Insurance:
[T]he primary intended beneficiaries are those entities in the check collection and payment process who are entitled to rely on the payor bank's adherence to the midnight deadline requirement. Given this, and given that [§ 4-302] plainly does not confer standing to the public at large, it follows that standing to sue for a [§ 4-302] violation is limited to those entities who, by virtue of their relation to the check transaction, either did suffer, or might have suffered, a loss that falls within the scope of the risk of loss created by the bank's failure to take prompt action in accordance with the statute. In other words, this statute confers standing to sue on a limited *139 class comprised of those involved in the collection and payment of the check at issue who may be directly harmed (but are not necessarily actually harmed) by the failure of the payor bank to adhere to the [§ 4-302] midnight deadline.

[813 F.Supp. at 428 (emphasis added).]
Under this analysis,
[a] payee clearly has standing to bring suit for the payor bank's failure to pay or return th[e] check in a timely fashion because of its potential reliance on the payor bank's prompt action. Nor does any question of standing arise where the original payee of a check assigns and/or transfers her rights in the instrument to another entity prior to its presentment for payment.

[Ibid.]
That view is sound because the assignee steps into the shoes of the original payee and is entitled to the statute's protection once it initiates the collection process. It is the potential reliance on payor bank action that arises once a check is actually presented that provides the basis for standing to sue under § 4-302. Ibid.
But where the plaintiff becomes the holder of the check, as well as the assignee of all rights arising from that instrument, after its untimely return and with full knowledge of its dishonor, it has no "vested interest in the timely payment or return of these checks." Id. at 428-29.
Thus, where, as here, a party becomes a holder, transferee and assignee of checks after their untimely return by a payor bank, that party has no standing to bring a cause of action for the bank's violation of § 4-302. Limiting standing in this manner does not, in any way, diminish the deterrent sting of [§ 4-302]'s strict liability rule, for it simply entrusts enforcement of this rule to those with the greatest incentive to enforce compliance.

[Id. at 429 (footnote omitted).]
Any argument to the contrary would misconstrue the nature of an enforcement action under this section. It is a cause of action for breach of a statutory duty, not an action for collection on a negotiable instrument. Id. at 430.
Affirmed.
NOTES
[1] BVB has not argued that any of the exceptions to the midnight deadline apply in this case. See 2 James J. White & Robert S. Summers, Uniform Commercial Code, § 20-4 at 313-14 (4th ed.1995).