777 A.2d 993 (2001)
343 N.J. Super. 73
Robert J. TRIFFIN, Plaintiff-Respondent,
v.
SOMERSET VALLEY BANK, Pavon Flores, Geovany Ayala, Mario Gomes, Marcelina Mejia, George Lopez Martinez, Pedro Lopez, Saul A. Beltran, Noe Cuadra, Marvin O. Rodriges, Defendants, and
Hauser Contracting Co., Defendant/Third-Party Plaintiff-Appellant,
v.
Automatic Data Processing, Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2001.
Decided July 17, 2001.
*995 Ronald V. Farneski, argued the cause for appellant.
Robert J. Triffin, argued the cause pro se.
*996 Before Judges HAVEY, CUFF and LISA.
*994 The opinion of the court was delivered by CUFF, J.A.D.
This case concerns the enforceability of dishonored checks against the issuer of the checks under Article 3 of the Uniform Commercial Code (UCC), as implemented in New Jersey in N.J.S.A. 12A:3-101 to 3-605.
Plaintiff purchased, through assignment agreements with check cashing companies, eighteen dishonored checks, issued by defendant Hauser Contracting Company (Hauser Co.). Plaintiff then filed suit in the Special Civil Part to enforce Hauser Co.'s liability on the checks. The trial court granted plaintiff's motion for summary judgment. Hauser Co. appeals the grant of summary judgment. It also argues, for the first time, that plaintiff lacked standing to file suit against Hauser Co. We affirm.
In October 1998, Alfred M. Hauser, president of Hauser Co., was notified by Edwards Food Store in Raritan and the Somerset Valley Bank (the Bank), that several individuals were cashing what appeared to be Hauser Co. payroll checks. Mr. Hauser reviewed the checks, ascertained that the checks were counterfeits and contacted the Raritan Borough and Hillsborough Police Departments. Mr. Hauser concluded that the checks were counterfeits because none of the payees were employees of Hauser Co., and because he did not write the checks or authorize anyone to sign those checks on his behalf. At that time, Hauser Co. employed Automatic Data Processing, Inc. (ADP) to provide payroll services and a facsimile signature was utilized on all Hauser Co. payroll checks.
Mr. Hauser executed affidavits of stolen and forged checks at the Bank, stopping payment on the checks at issue. Subsequently, the Bank received more than eighty similar checks valued at $25,000 all drawn on Hauser Co.'s account.
Plaintiff is in the business of purchasing dishonored negotiable instruments. In February and March 1999, plaintiff purchased eighteen dishonored checks from four different check cashing agencies, specifying Hauser Co. as the drawer. The checks totaled $8,826.42. Pursuant to assignment agreements executed by plaintiff, each agency stated that it cashed the checks for value, in good faith, without notice of any claims or defenses to the checks, without knowledge that any of the signatures were unauthorized or forged, and with the expectation that the checks would be paid upon presentment to the bank upon which the checks were drawn. All eighteen checks bore a red and green facsimile drawer's signature stamp in the name of Alfred M. Hauser. All eighteen checks were marked by the Bank as "stolen check" and stamped with the warning, "do not present again." Each of the nine payees on the eighteen checks are named defendants in this case.
Plaintiff then filed this action against the Bank, Hauser Co., and each of the nine individual payees.[1] Plaintiff contended that Hauser Co. was negligent in failing to safeguard both its payroll checks and its authorized drawer's facsimile stamp, and was liable for payment of the checks.
The trial court granted plaintiff's summary judgment motion, concluding that no genuine issue of fact existed as to the authenticity of the eighteen checks at issue. *997 Judge Hoens concluded that because the check cashing companies took the checks in good faith, plaintiff was a holder in due course as assignee. Judge Hoens also found that because the checks appeared to be genuine, Hauser Co. was required, but had failed, to show that plaintiff's assignor had any notice that the checks were not validly drawn.
On appeal, Hauser Co. contends for the first time that plaintiff lacked standing to sue. As a general rule, an appellate court will not consider matters not properly raised below, unless the issue goes to the jurisdiction of the trial court or substantially implicates a matter of public interest. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Even if the matter satisfies that test, the court will not consider the issue if the record before the court is incomplete as to the newly presented issue. Alan J. Cornblatt, supra, 153 N.J. at 230, 708 A.2d 401. Because the issue of plaintiff's standing is ascertainable from the existing record, there is no factual barrier to appellate review of this issue. We also conclude that the issue of standing is of substantial importance because standing involves a threshold determination which governs the ability of a party to initiate and maintain an action before the court. In re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999).
The "essential purpose" of the standing doctrine in New Jersey is to
assure that the invocation and exercise of judicial power in a given case are appropriate. Further, the relationship of plaintiffs to the subject matter of the litigation and to other parties must be such to generate confidence in the ability of the judicial process to get to the truth of the matter and in the integrity and soundness of the final adjudication. Also, the standing doctrine serves to fulfill the paramount judicial responsibility of a court to seek just and expeditious determinations on the ultimate merits of deserving controversies.
[New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 69, 411 A.2d 168 (1980).]
Consequently, the New Jersey Supreme Court has held that "standing is an element of justiciability that cannot be waived or conferred by consent." In re Adoption of Baby T., supra, 160 N.J. at 341, 734 A.2d 304 (citing New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 411, 686 A.2d 1265 (App.Div.), certif. granted, 152 N.J. 13, 702 A.2d 352 (1997), appeal dismissed as moot, 152 N.J. 361, 704 A.2d 1297 (1998)).
Standing is governed by R. 4:26-1, which provides that "[e]very action may be prosecuted in the name of the real party in interest...." There is no distinction between a party in interest and standing in New Jersey. New Jersey Citizen Action, supra, 296 N.J.Super. at 413, 686 A.2d 1265; see also Pressler, Current N.J. Court Rules, comment on R. 4:26-1 (2001) (stating that "real party in interest rule is ordinarily determinative of standing to prosecute an action").
Case law further states that standing refers to a party's "ability or entitlement to maintain an action before the court." New Jersey Citizen Action, supra, 296 N.J.Super. at 409, 686 A.2d 1265. To be entitled to sue, a party must have "a sufficient stake and real adverseness with respect to the subject matter of the litigation." In re Adoption of Baby T., supra, 160 N.J. at 340, 734 A.2d 304. Additionally, "[a] substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision *998 is needed for the purposes of standing." Ibid. Standing has been broadly construed in New Jersey as "our courts have considered the threshold for standing to be fairly low." Reaves v. Egg Harbor Township, 277 N.J.Super. 360, 366, 649 A.2d 904 (Ch. Div.1994).
Under this standard, it is evident that plaintiff has standing to sue Hauser Co. Plaintiff is the purchaser and assignee of eighteen checks, which he now seeks to have honored by Hauser Co., the drawer of the checks. See Triffin v. Cigna Ins. Co., 297 N.J.Super. 199, 202, 687 A.2d 1045 (App.Div.1997).
We reject Hauser Co.'s argument that our recent case, Triffin v. Bridge View Bank, 330 N.J.Super. 473, 750 A.2d 136 (App.Div.2000), means plaintiff lacks standing to sue it. In Bridge View Bank, we held that plaintiff had no standing to sue the bank for failure to comply with N.J.S.A. 12A:4-302, the midnight deadline rule. This rule imposes accountability on a payor bank for the amount of an item presented to and received by the payor bank, if the bank "retains the item beyond midnight of the banking day of receipt without settling for it or, ... does not pay or return the item or send notice of dishonor until after its midnight deadline." N.J.S.A. 12A:4-302(a)(1). We held that standing was limited to those entities who received the check prior to its dishonor because the statute confers standing to sue on a limited class, " `comprised of those involved in the collection and payment of the check at issue who may be directly harmed ... by the failure of the payor bank to adhere to the ... midnight deadline.' " Bridge View Bank, supra, 330 N.J.Super. at 477, 750 A.2d 136 (quoting American Title Ins. Co. v. Burke & Herbert Bank & Trust Co., 813 F.Supp. 423, 428 (E.D.Va.1993), aff'd o.b., 25 F.3d 1038 (4th Cir.1994)).
There is nothing in Bridge View Bank to indicate that the holding should be expanded beyond actions brought under N.J.S.A. 12A:4-302. The case was decided on narrow grounds; restricted to the issue of standing to sue a payor bank. Thus, it bears no relevance to plaintiff's standing to sue Hauser Co., the drawer of the checks.
As to the merits of the appeal, Hauser Co. argues that summary judgment was improperly granted because the court failed to properly address Hauser Co.'s defense that the checks at issue were invalid negotiable instruments and therefore erred in finding plaintiff was a holder in due course.
Our review of the order is limited to whether, reviewing the evidence in the light most favorable to the non-moving party, there was any issue of material fact, and whether plaintiff was entitled to prevail, as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); Prudential Property & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998).
As a threshold matter, it is evident that the eighteen checks meet the definition of a negotiable instrument. N.J.S.A. 12A:3-104. Each check is payable to a bearer for a fixed amount, on demand, and does not state any other undertaking by the person promising payment, aside from the payment of money. In addition, each check appears to have been signed by Mr. Hauser, through the use of a facsimile stamp, permitted by the UCC to take the place of a manual signature. N.J.S.A. 12A:3-401(b) provides that a "signature may be made manually or by means of a device or machine ... with present intention to authenticate a writing." It is uncontroverted by Hauser Co. that the facsimile signature stamp on the checks is identical to Hauser Co.'s authorized stamp.
*999 Hauser Co., however, contends that the checks are not negotiable instruments because Mr. Hauser did not sign the checks, did not authorize their signing, and its payroll service, ADP, did not produce the checks. Lack of authorization, however, is a separate issue from whether the checks are negotiable instruments. Consequently, given that the checks are negotiable instruments, the next issue is whether the checks are unenforceable by a holder in due course, because the signature on the checks was forged or unauthorized.
N.J.S.A. 12A:3-203 and N.J.S.A. 12A:3-302 discuss the rights of a holder in due course and the rights of a transferee of a holder in due course. Section 3-302 establishes that a person is a holder in due course if:
(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
(2) the holder took the instrument for value, in good faith, without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, without notice that the instrument contains an unauthorized signature or has been altered, without notice of any claim to the instrument described in 12A:3-306, and without notice that any party has a defense or claim in recoupment described in subsection a. of 12A:3-305.
Section 3-203 deals with transfer of instruments and provides:
a. An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
b. Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.
The official comment to N.J.S.A. 12A:3-203 adds that in situations where a transferee does not take the instrument by indorsement (as in this case), the transferee still assumes the rights of the transferor, so long as the transferee can show that the transferor had valid rights to the instrument, and that the transferee acquired the instrument in accordance with section 3-203's requirements. Specifically, Comment 2 reads:
Subsection (b) states that transfer vests in the transferee any right of the transferor to enforce the instrument "including any right as a holder in due course." If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights, those rights must be proved. Because the transferee is not a holder, there is no presumption under Section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the *1000 transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder. At that point the transferee is entitled to the presumption under Section 3-308.
Under subsection (b) a holder in due course that transfers an instrument transfers those rights as a holder in due course to the purchaser. The policy is to assure the holder in due course a free market for the instrument.
[N.J.S.A. 12A:3-203, Comment 2 (emphasis added).]
The record indicates that plaintiff has complied with the requirements of both sections 3-302 and 3-203. Each of the check cashing companies from whom plaintiff purchased the dishonored checks were holders in due course. In support of his summary judgment motion, plaintiff submitted an affidavit from each company; each company swore that it cashed the checks for value, in good faith, without notice of any claims or defenses by any party, without knowledge that any of the signatures on the checks were unauthorized or fraudulent, and with the expectation that the checks would be paid upon their presentment to the bank upon which the checks were drawn. Hauser Co. does not dispute any of the facts sworn to by the check cashing companies.
The checks were then transferred to plaintiff in accordance with section 3-203, vesting plaintiff with holder in due course status. Each company swore that it assigned the checks to plaintiff in exchange for consideration received from plaintiff. Plaintiff thus acquired the check cashing companies' holder in due course status when the checks were assigned to plaintiff. See N.J.S.A. 12A:3-203, Comment 2. Moreover, pursuant to section 3-203(a)'s requirement that the transfer must have been made for the purpose of giving the transferee the right to enforce the instrument, the assignment agreements expressly provided plaintiff with that right, stating that "all payments [assignor] may receive from any of the referenced Debtors ... shall be the exclusive property of [assignee]." Again, Hauser Co. does not dispute any facts relating to the assignment of the checks to plaintiff.
Hauser Co. contends, instead, that the checks are per se invalid because they were fraudulent and unauthorized. Presumably, this argument is predicated on section 3-302. This section states a person is not a holder in due course if the instrument bears "apparent evidence of forgery or alteration" or is otherwise "so irregular or incomplete as to call into question its authenticity." N.J.S.A. 12A:3-302(a)(1).
In order to preclude liability from a holder in due course under section 3-302, it must be apparent on the face of the instrument that it is fraudulent. The trial court specifically found that Hauser Co. had provided no such evidence, stating that Hauser Co. had failed to show that there was anything about the appearance of the checks to place the check cashing company on notice that any check was not valid. Specifically, with respect to Hauser Co.'s facsimile signature on the checks, the court stated that the signature was identical to Hauser Co.'s authorized facsimile signature. Moreover, each of the check cashing companies certified that they had no knowledge that the signatures on the checks were fraudulent or that there were any claims or defenses to enforcement of the checks. Hence, the trial court's conclusion that there was no apparent evidence of invalidity was not an abuse of discretion and was based on a reasonable reading of the record.
*1001 To be sure, section 3-308(a) does shift the burden of establishing the validity of the signature to the plaintiff, but only if the defendant specifically denies the signature's validity in the pleadings. The section states:
In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.
[N.J.S.A. 12A:3-308(a) (emphasis added).]
Comment 1 explains that a specific denial is required
to give the plaintiff notice of the defendant's claim of forgery or lack of authority as to the particular signature, and to afford the plaintiff an opportunity to investigate and obtain evidence.... In the absence of such specific denial the signature stands admitted, and is not in issue. Nothing in this section is intended, however, to prevent amendment of the pleading in a proper case.

[N.J.S.A. 12A:3-308, Comment 1.]
Examination of the pleadings reveals that Hauser Co. did not specifically deny the factual assertions in plaintiff's complaint.
Even if Hauser Co.'s general denial was sufficient, the presumption that the signature is valid still remains, unless Hauser Co. satisfies the evidentiary requirements of N.J.S.A. 12A:3-308. Comment 1 to that section explains that even when the defendant has specifically denied the authenticity of a signature, the signature is still presumed to be authentic, absent evidence of forgery or lack of authorization. Comment 1 states:
The burden is on the party claiming under the signature, but the signature is presumed to be authentic and authorized except as stated in the second sentence of subsection(a). "Presumed" is defined in Section 1-201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff.
[N.J.S.A. 12A:3-308, Comment 1 (emphasis added).]
Here, Hauser Co. has not provided any evidence of the invalidity of the signature. Hauser Co.'s reliance on conclusory statements does not constitute such a "sufficient showing." See Coupounas v. Madden, 401 Mass. 125, 514 N.E.2d 1316, 1320 (1987) (defendant disputing validity of notes "had to do more than `call into question' the `integrity' of the notes").
In addition, as a matter of summary judgment, Hauser Co.'s reliance on its answer, amended answer and Mr. Hauser's affidavit as material, disputed *1002 facts is inadequate. In order to defeat a motion for summary judgment, a party must show that there are genuine issues of material fact. Brill, supra, 142 N.J. at 540, 666 A.2d 146. "Bare conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." United States Pipe and Foundry Co. v. American Arbitration Ass'n, 67 N.J.Super. 384, 399-400, 170 A.2d 505 (App.Div.1961); see also Brae Asset Fund v. Newman, 327 N.J.Super. 129, 134, 742 A.2d 986 (App.Div.1999). Hauser Co. provided no factual evidence tending to disprove the authenticity of the signature, relying instead on self-interested and conclusory statements. Consequently, the trial court did not err in finding that Hauser Co. had failed to provide any evidence of the invalidity of the checks.
In conclusion, we hold that Judge Hoens properly granted summary judgment. There was no issue of material fact as to: (1) the status of the checks as negotiable instruments; (2) the status of the check cashing companies as holders in due course; (3) the status of plaintiff as a holder in due course; and (4) the lack of apparent evidence on the face of the checks that they were forged, altered or otherwise irregular. Moreover, Hauser Co.'s failure to submit some factual evidence indicating that the facsimile signature was forged or otherwise unauthorized left unchallenged the UCC's rebuttable presumption that a signature on an instrument is valid. Consequently, the trial court properly held, as a matter of law, that plaintiff was a holder in due course and entitled to enforce the checks.
Affirmed.
NOTES
[1] Plaintiff never served any of the nine individual payees. Plaintiff voluntarily dismissed his claims against the Bank and moved for summary judgment against Hauser Co.