858 A.2d 1 (2004)
372 N.J.Super. 221
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
MELLON PSFS, Defendant-Respondent, and
Current Food Concepts BW, Inc. (d/b/a Burger King # 1082 and Burger King # 15478), Shellen S. White and Nikeya R. Howard, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted August 11, 2004.
Decided September 28, 2004.
Robert J. Triffin, appellant, pro se.
Silverman, Bernheim & Vogel, Philadelphia, PA, for respondent (Daniel S. Bernheim, 3d, of the Pennsylvania bar, and Lauren R. Berschler, on the brief).
Before Judges SKILLMAN, COBURN and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
Plaintiff seeks reconsideration of our prior decision in this matter. On that earlier occasion, we disagreed with the trial judge's determination that plaintiff had no standing to pursue his assignor's claim, but concluded that the dismissal of the complaint should be affirmed because the evidence adduced at trial did not demonstrate, or permit a legitimate inference, that defendant Mellon PSFS breached the midnight deadline rule. Triffin v. Mellon PSFS, 372 N.J.Super. 3, 855 A.2d 2 (App.Div.2004). Judge Coburn wrote separately to express his disagreement with our ruling on standing, but stated his agreement *2 with our discussion of the merits and joined in the judgment affirming the dismissal of the complaint.
In moving for reconsideration, plaintiff contends that we overlooked (1) the parties' stipulation of certain facts which, he claims, mandates a judgment in his favor, and (2) Mellon's failure to produce, at trial, a witness and documents pursuant to his notice in lieu of subpoena. While these circumstances went unmentioned in our earlier opinion, they were not ignored or misapprehended. We take this opportunity to explain why plaintiff's contentions do not compel an alteration of our prior decision.
The stipulation of facts referred to in the motion for reconsideration consists of Mellon's concession that the checks in question were presented to it by First Union on August 23, 2001 and dishonored on October 1, 2001. Plaintiff argues that this stipulation provides "all of the operative facts required" to establish a midnight deadline violation. We disagree.
While our courts favor stipulated facts because they serve "to avoid the expense, trouble, and delay of coming forward with proofs when certain otherwise-contestable facts are admitted," Negrotti v. Negrotti, 98 N.J. 428, 432, 487 A.2d 328, 330 (1985), they must be construed "with reference to their subject matter and in light of the surrounding circumstances," Kurak v. A.P. Green Refractories Co., 298 N.J.Super. 304, 325, 689 A.2d 757, 768 (App.Div.1997). Despite plaintiff's contention that the stipulation definitively resolved all the issues in dispute, we conclude that the stipulation can only be accurately understood when considered in the context of Mellon's counsel's statements as to what it was he was conceding, most telling of which are the following comments:
So, if the [forged] check was deposited for $335.14 that was the amount that Mellon originally debited from Current Foods Concept['s] account, and then when [Current Food Concept] made its claim [that it was a victim of forgeries,] Mellon credited the account of Current Food Concepts for that same amount, so I presume that that's the amount that Mellon received from First Union.... So, if we're being asked to stipulate that the debit  or that the amount that First Union passed back to Mellon was the amount of the items themselves then, you know, we'll stipulate to that....
[Emphasis added.]
In other words, by so stipulating, Mellon intended to convey that it immediately responded to the checks upon presentment and later was reimbursed by First Union on October 1, 2001. As can be seen, this last event, which the parties stipulated as the date Mellon "dishonored" the checks, was not intended to be representative of the date that Mellon first responded to the checks. As recognized in our earlier opinion, Mellon's other evidence demonstrated that Mellon paid the checks when presented and only later, when it became apparent that the checks were counterfeit, did Mellon obtain affidavits of forgery from its customer and pursue reimbursement, which it obtained, from First Union. Thus, in light of its context and the surrounding circumstances, Kurak, supra, 298 N.J.Super. at 325, 689 A.2d at 768, we reject the contention that the stipulation is conclusive as to the alleged midnight deadline violation.
Plaintiff's argument in this regard is also based upon a mistaken understanding of the UCC provisions cited in our earlier opinion. These provisions do not require the completion of a bank's involvement with an item by the midnight deadline. The deadline's essential purpose is to foster *3 the continued and rapid movement of such items through the marketplace, hence, forbidding a bank, upon penalty of the imposition of liability for delay, to simply hold an item and use the drawer's money as long as possible. See James J. White and Robert S. Summers, Uniform Commercial Code, Vol. 2, § 20-2 (4th ed., 1995). The meaning of the stipulation, as revealed by the discussion among the court and counsel quoted earlier, and the applicable statutes, cannot be equated with plaintiff's contention that Mellon conceded a breach of the deadline. Instead, when examined in context, the stipulation's meaning is entirely consistent with our prior holding that Mellon timely acted on the check and later sought reimbursement when the check's counterfeit nature was revealed. In other words, when considered in its setting, the stipulation that the checks were "dishonored" on October 1, 2001 does not mean, and was obviously not intended to mean, that Mellon simply held the check for over one month. Instead, the stipulation only fixes the date that Mellon was reimbursed by First Union for having mistakenly paid these counterfeit items on a previous occasion.
As explained in our earlier opinion, a bank's rights with respect to a paid item are not permanently fixed when the clock strikes twelve. Items may be paid provisionally, and the bank's obligations may be further adjusted by clearing house rules or other agreement. And, while the bank's obligations are ordinarily fixed upon making "final payment," as defined by N.J.S.A. 12A:4-215, the bank may still seek reimbursement even after it has "finally paid" an item, N.J.S.A. 12A:3-418. In this last circumstance, the item is "deemed not to have been paid or accepted" but is treated as "dishonored," N.J.S.A. 12A:3-418(d),[1] the very word used by the parties in their stipulation to describe Mellon's actions on October 1, 2001. Accordingly, even if we were to accept the stipulation on its face and ignore all the other evidence in the record, as plaintiff mistakenly argues, the stipulation remains entirely consistent with Mellon's exercise of a right of reimbursement pursuant to N.J.S.A. 12A:3-418 and not a breach of the midnight deadline. In addition, a look beyond the mere words of the stipulation to the other evidence contained in the record, which we have previously discussed, demonstrates that Mellon did not simply hold the checks for more than one month but paid them immediately and later obtained reimbursement from First Union. Illuminated by that evidence, the stipulation obviously contains only the intention of the parties to stipulate that Mellon was reimbursed by First Union on October 1, 2001. Thus, the existence of the stipulation of facts referred to by plaintiff does not effect our earlier decision that plaintiff's proofs failed to fix the date of the midnight deadline or illuminate what Mellon did or did not do within that deadline, and presents no reason for an alteration of our earlier judgment.
Plaintiff also argues that we should not have affirmed the dismissal of his complaint, but instead should have entered judgment in his favor, because Mellon failed to produce the witness and documents requested in his notice in lieu of subpoena. Putting aside the fact that plaintiff never made this argument in his *4 submissions to this court, we observe that plaintiff also failed to fully pursue his oral motion for enforcement of the notice in lieu of subpoena at trial. When the issue arose during the course of the trial, the colloquy among the trial judge and counsel resulted in the stipulation of facts referred to above. Once the stipulation was expressed, the trial judge asked plaintiff if that was "sufficient for [his] purposes," to which plaintiff responded that it was, and following which he rested his case. Because plaintiff failed to further pursue enforcement of the notice in lieu of subpoena, and because he failed to raise the issue in his brief on the merits, plaintiff will not now be heard to complain, in seeking reconsideration, that the trial judge should have enforced the notice in lieu of subpoena.
Plaintiff lastly argues that Judge Coburn's separate opinion is not a concurring opinion but, in fact, a dissenting opinion, and should be amended to so indicate. We disagree. Our judgment affirmed the dismissal of plaintiff's complaint. Judge Coburn concurred in that judgment, albeit for different reasons.
Plaintiff's contention appears to center on the fact that we held he had standing to sue and expressly disagreed with Triffin v. Bridge View Bank, 330 N.J.Super. 473, 750 A.2d 136 (App.Div.2000), while Judge Coburn expressed his continued adherence to Bridge View Bank, an opinion which he authored. Notwithstanding that disagreement, our further review of the merits of plaintiff's claim led to a conclusion, in which Judge Coburn joined, that plaintiff failed to produce any evidence at trial to demonstrate Mellon's breach of the midnight deadline rule. As a result, Judge Coburn concurred in the judgment and correctly labeled his separate opinion as a concurrence.
We further observed that the correct labeling of Judge Coburn's separate opinion is purely academic for present purposes. While the defining of the opinion as a dissent or concurrence may have relevance to the appealability, as of right, of our judgment, R. 2:2-1(a)(2), it bears no impact and presents no reason for the reconsideration of the opinion which announced the judgment of this court. Whether or to what extent Judge Coburn's separate opinion gives rise to an appeal as of right is a matter which rests only with our Supreme Court. See Stone v. Old Bridge Tp., 111 N.J. 110, 115-16 n. 2, 543 A.2d 431, 433-34 n. 2 (1988).
Motion denied.[2]
NOTES
[1] N.J.S.A. 12A:3-418(d) states, in its entirety: "Notwithstanding 12A:4-215, if an instrument is paid or accepted by mistake and the payor or acceptor recovers payment or revokes acceptance under [N.J.S.A. 12A:3-418(a) or (b)], the instrument is deemed not to have been paid or accepted and is treated as dishonored, and the person from whom payment is recovered has rights as a person entitled to enforce the dishonored instrument" (emphasis added).
[2] I am authorized to state that Judge Coburn concurs in this opinion.