**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4907-18

PHH MORTGAGE
CORPORATION,

     Plaintiff-Respondent,

v.

YVETTE LABOSSIERE,
MR. LABOSSIERE, husband
of YVETTE LABOSSIERE,

     Defendants-Appellants.

_____

     Argued March 1, 2021 – Decided March 18, 2021

     Before Judges Fasciale and Mayer.

     On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. F-013704-12.

     Yvette Labossiere, appellant pro se.[1]

---

[1] Defendant was notified that oral argument was scheduled to commence at 10:15 a.m. The court and counsel waited until 10:37 a.m. but defendant did not appear. Staff attempted to contact defendant by phone and email, unsuccessfully.

Michael Eskenazi argued the cause for respondent (Friedman Vartolo, LLP, attorneys; Michael Eskenazi, on the brief).

PER CURIAM

Defendant appeals from June 6, 2019 order denying her motion to vacate an order providing that PHH Mortgage Corporation (PHH) had standing to maintain its foreclosure action and reinstating a June 19, 2017 final judgment of foreclosure (Second Final Judgment of Foreclosure). She also appeals from the Second Final Judgment of Foreclosure and a November 12, 2014 order suppressing her answer with prejudice. We have carefully considered defendant's contentions and affirm.

On November 17, 2007, defendant obtained a mortgage loan from PHH and in return executed a security agreement to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for PHH. On November 27, 2009, defendant and PHH entered into a loan modification agreement, which provided "[i]f applicable, [defendant's] total mortgage payment may change due to changes in [defendant's] escrow account." On June 7, 2010, PHH learned that defendant had failed to pay property taxes and that the property would go to a tax sale by the end of the month. PHH paid the overdue property taxes, exercised its contractual right to escrow the loan, and in January 2011, notified defendant that

her loan would be escrowed, and her monthly payments would increase beginning in March 2011.

Thereafter, defendant defaulted on her mortgage. On July 19, 2012, PHH initiated the underlying foreclosure action. Defendant defaulted by failing to respond to the complaint, which resulted in a default judgment. On April 30, 2013, Judge Paul Innes issued a final judgment of foreclosure (First Final Judgment of Foreclosure) and permitted the sheriff's sale to proceed. In September 2013, defendant filed a motion to vacate the entry of default judgment and First Final Judgment of Foreclosure. On September 6, 2013, Judge Mary Eva Colalillo stayed the sheriff's sale, and on October 25, 2013, vacated the default judgment and permitted defendant to file an answer to plaintiff's complaint.

On October 1 and November 6, 2014, Judge Nan S. Famular presided over the foreclosure trial. On November 13, 2014, Judge Famular suppressed defendant's answer and defenses with prejudice and returned the matter to the Office of Foreclosure. Defendant filed a motion to vacate the order, which Judge Famular denied on January 9, 2015. On June 19, 2017, Judge Innes issued the Second Final Judgment of Foreclosure and permitted the sheriff's sale to proceed. Defendant filed a motion to vacate the Second Final Judgment of

A-4907-18

Foreclosure, which Judge Famular denied on October 17, 2017. Effective December 21, 2017, PHH transferred its interest in the mortgaged property to Selene Finance, LP (Selene) who collected payments on behalf of BlueWater Investment Holdings, LLC. (BlueWater).

In January 2018, defendant filed a second motion to vacate the Second Final Judgement of Foreclosure. The next month she filed for bankruptcy. On September 10, 2018, following the lifting of the bankruptcy stay, Judge Famular again entered an order denying the second motion to vacate the Second Final Judgment of Foreclosure. Defendant then filed a motion to stay the sheriff's sale, which Judge Famular denied on September 12, 2018. The following March, defendant moved to stay the sheriff's sale and vacate the Second Final Judgment of Foreclosure. On March 12, 2019, Judge Famular denied the motion to stay the sheriff's sale, but scheduled oral argument on whether to vacate the Second Final Judgment of Foreclosure.

Judge Famular conducted oral argument on April 26, 2019. Then-attorney for defendant argued that the Final Order of Foreclosure should be vacated because "new evidence presented to the bankruptcy court" showed that PHH had repeatedly transferred its interest in the mortgage. Judge Famular requested that both parties file supplemental briefs addressing whether PHH retained standing

4

to foreclose the mortgage despite transferring its interest after instituting the foreclosure action. On June 6, 2019, after reviewing the parties' submissions, Judge Famular concluded that PHH retained standing to foreclose, denied defendant's motion to vacate the Second Final Judgment of Foreclosure, reinstated the Second Final Judgment of Foreclosure, and returned the file to the Office of Foreclosure.

On July 12, 2019, defendant filed a notice of appeal of the June 6, 2019 order. The following February, defendant filed an amended notice of appeal adding the Second Final Judgment of Foreclosure and the November 13, 2014 order dismissing her answers and claims with prejudice.

On appeal, defendant raises the following arguments for this court's consideration:

> POINT I
>
> THE TRIAL [JUDGE] ERRED BY RULING IN PLAINTIFF'S FAVOR DESPITE DEFENDANT'S EVIDENCE OF NO DEFAULT UNDER THE SUBJECT MODIFICATION AGREEMENT, NOTE AND MORTGAGE AND PLAINTIFF'S UNCONSCIONABLE PRACTICES TO FALSIFY A DEFAULT.
>
> POINT II
>
> THE TRIAL [JUDGE] ERRED UPON FAILING TO REMAIN NEUTRAL BY CREATING AN

EXPLANATION FOR PLAINTIFF AND ITS WITNESSES WHO WERE UNABLE TO EXPLAIN, JUSTIFY AND PROVE THE DEFAULT AND AMOUNTS DECLARED DUE AND OWING UNDER THE SUBJECT MODIFICATION AGREEMENT, NOTE AND MORTGAGE.

POINT III

THE TRIAL [JUDGE] ERRED UPON DECLARING THAT PLAINTIFF'S CLAIMS OF AGENCY WITH [MERS] AS ITS ALLEGED "NOMINEE" WERE NOT RELEVANT DESPITE EXISTING LAWS OF AGENCY AND PLAINTIFF'S ASSERTIONS MADE TO CLAIM STANDING BELOW.

POINT IV

THE TRIAL [JUDGE] ERRED BY ALLOWING AN INSTRUMENT PRESENTED AS AN "ASSIGNMENT" OF THE SUBJECT MORTGAGE TO BE PRESENTED AT TRIAL THAT WAS CREATED BY PHELAN HALLINAN SCHMIEG, P.C. / PHELAN HALLINAN DIAMOND & JONES, P.C., DISPLAYS THE NAME AND SIGNATURES OF THE FIRM'S ATTORNEY AS AN OFFICER OF THE ALLEGED ASSIGNOR BEFORE A NOTARY PUBLIC ALSO EMPLOYED BY THE FIRM(S), AND CONSTITUTES (AT BEST) A CONFLICT OF INTEREST.

POINT V

THE TRIAL [JUDGE] ERRED BY ALLOWING PLAINTIFF TO PROCEED WITH [THE] SHERIFF['S] SALE TO PRESENT DATE MORE THAN TWO YEARS AFTER PLAINTIFF RECEIVED CONSIDERATION FOR THE SUBJECT

6

NOTE AND MORTGAGE FROM A THIRD-PARTY, AND PLAINTIFF ABSOLVED ITSELF OF ANY INTEREST IN THE SUBJECT MODIFICATION AGREEMENT, NOTE, MORTGAGE, AND PROPERTY.

POINT VI

THE TRIAL [JUDGE] ERRED BY IGNORING PLAINTIFF'S COMMUNICATION MADE PURSUANT TO FEDERAL LAW, NOTIFYING DEFENDANT OF PLAINTIFF BECOMING THE "NEW OWNER" OF THE SUBJECT NOTE AND MORTGAGE AFTER THE MATTER BELOW WAS COMMENCED.

In her reply, defendant raises the following additional arguments, which we have renumbered:

[POINT VII]

CONTRARY TO PLAINTIFF'S . . . REPEATED CLAIM, THE DEFAULT ALLEGED WITHIN THE UNDERLYING FORECLOSURE COMPLAINT AND SUBJECT OF FINAL JUDGMENT IS FALSE, FABRICATED, UNPROVEN AND CONTRADICTORY.

[POINT VIII]

FALSE, UNSUBSTANTIATED AND CONTRADICTORY AFFIDAVIT OF AMOUNT DUE IN SUPPORT OF FINAL JUDGMENT.

7 <span>A-4907-18</span>

[POINT IX]

THE SCALES OF EQUITY FAVOR DEFENDANT'S
. . . APPEAL IN RETROSPECT OF THE NEW
JERSEY CONSENT JUDGMENT ENTERED
AGAINST PLAINTIFF . . . AND THE LATTER'S
CONTINUED ENGAGEMENT IN UNFAIR,
DECEPTIVE AND UNLAWFUL SERVICING AND
FORECLOSURE PRACTICES BELOW AND
FAILURE TO REMEDIATE.

[POINT X]

A MISCARRIAGE OF JUSTICE WILL OCCUR
ABSENT RELIEF TO DEFENDANT[.]

Defendant has not established a basis for vacation of the June 6, 2019 order, and her arguments pertaining to the Second Final Judgment of Foreclosure and November 12, 2014 order are untimely under Rule 2:4-1(a) and unpersuasive on the merits.

I.

We first address defendant's contention that the motion judge erred in denying the motion to vacate the Second Final Judgment of Foreclosure.

Where a party seeks to vacate a final judgment or order, they must meet the standard of Rule 4:50-1:

> On motion, with briefs, and upon such terms as are just, the [judge] may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise,

A-4907-18

or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud . . . , misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A trial judge's determination on a motion to vacate a final judgment "warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion is a decision "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Rule 4:50-1(a) permits vacation of a final judgment as a result of "mistake, inadvertence, surprise, or inexcusable neglect." Our Court has recognized that these words were meant to "encompass situations in which a party, through no fault of its own, has engaged in erroneous conduct or reached a mistaken judgment on a material point at issue in the litigation." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 262 (2009). That conduct must be the type of "litigation

errors that a party could not have protected against." Id. at 263 (citation and internal quotation marks omitted).

Rule 4:50-1(b) permits vacation of a final judgment where a party demonstrates "that the evidence would probably have changed the result, that it was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative." Id. at 264 (quoting Quick Chek Food Stores v. Twp. of Springfield, 83 N.J. 438, 445 (1980)). All three of these requirements must be met to justify vacatur. Ibid. "'[N]ewly discovered evidence' does not include an attempt to remedy a belated realization of the inaccuracy of an adversary's proofs." Ibid. (quoting at Posta v. Chung-Loy, 306 N.J. Super. 182, 206 (App. Div. 1997)).

A.

Defendant argues that the Second Final Judgment of Foreclosure should be vacated because of defendant's failure to include evidence at trial due to innocent mistake, R. 4:50-1(a), and "new evidence presented to the bankruptcy court," R. 4:50-1(b), which defendant contends demonstrates plaintiff does not have standing to foreclose on the subject property. Defendant asserts that because the mortgage was assigned multiple times prior to the commencement of the foreclosure, and because plaintiff transferred the mortgage to BlueWater

after plaintiff commenced the foreclosure action, PHH does not have standing to maintain the foreclosure action.

"Standing is not a jurisdictional issue in New Jersey." Capital One, N.A. v. Peck, 455 N.J. Super. 254, 259 (App. Div. 2018) (citing Deutsch Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 101 (App Div. 2012)). Instead, standing "is an element of justiciability" that "affects whether a matter is appropriate for judicial review rather than whether the court has the power to review the matter." Russo, 429 N.J. Super at 102 (quoting New Jersey Citizens Action v. Riviera Motel Corp., 296 N.J. Super. 402, 411 (App. Div. 1997)). To have standing, "a party must have 'a sufficient stake and real adverseness with respect to the subject matter of the litigation.'" Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 81 (App. Div. 2001) (quoting In re Adoption of Baby T., 160 N.J. 332, 340 (1999)). Additionally, "[a] sufficient likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed[.]" Ibid. "Standing has been broadly construed in New Jersey as '[the] courts have considered the threshold for standing to be fairly low.'" Ibid. (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (App. Div. 1994)).

To have standing in a foreclosure action, "a party seeking to foreclose a mortgage must own or control the underlying debt." Wells Fargo Bank, N.A. v.

Ford, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010)). If a party does not have ownership or control of the underlying debt, the complaint must be dismissed. Ibid. However, "possession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing." Deutsche Bank Tr. Co. Americas v. Angeles, 428 N.J. Super 315, 218 (App. Div. 2012) (citing Deutsche Bank Nat. Tr. Co. v. Mitchell, 422 N.J. Super. 214, 216 (App. Div. 2011)).

Defendant has not established under Rule 4:50-1(a) any facts or circumstances that would warrant vacating the Second Final Judgment of Foreclosure. Nor has defendant established under Rule 4:50-1(b) that new evidence which was unobtainable through due diligence would have changed the outcome of the trial. MERS, as nominee for PHH, recorded the mortgage on December 5, 2007, and conveyed its beneficial interest in the mortgage to defendant on March 3, 2009. Plaintiff later commenced this action in July 2012. Plaintiff controlled the mortgage on the date of the filing of the complaint and therefore had standing to maintain the foreclosure action. PHH's transfer of its interest to Selene is of no moment, and PHH retains standing to maintain the foreclosure action. And even if it were the case that plaintiff did not have

standing, the judgment would still not be void under <u>Rule</u> 4:50-1(d).  <u>See</u> <u>Russo</u>, 429 N.J. Super. at 101 (noting that "a foreclosure judgment obtained by a party that lacked standing is not 'void' within the meaning of <u>Rule</u> 4:50-1(d)").

B.

Defendant additionally argues that the sheriff's sale cannot proceed because she submitted a loss mitigation application to Selene in September 2018, but Selene has not issued a decision.  While not directly addressed, this argument appears to be based on provisions of the Real Estate Settlement Procedures Act (RESPA) and its accompanying regulations.  Defendant does not point to a particular subsection of <u>Rule</u> 4:50-1 as the basis for vacation as to the loss mitigation application, so we will address each basis.  <u>See</u> <u>F.B. v. A.L.G</u>, 176 N.J. 201, 208 (2003).

RESPA was enacted to protect borrowers from "certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a). Congress authorized the Consumer Financial Protection Bureau (CFPB) to promulgate rules and regulations in furtherance of RESPA's goals.  12 U.S.C. § 2617(a).  Pertinent to this appeal, 12 C.F.R. § 1024.41(g) provides:

> [i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than [thirty-

seven] days before a foreclosure sale, a servicer shall not . . . conduct a foreclosure sale, unless:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

> (2) The borrower rejects all loss mitigation options offered by the servicer; or

> (3) The borrower fails to perform under an agreement on a loss mitigation option.

Although borrowers have a private right of action to enforce the procedural requirements set forth 12 C.F.R. § 1024.41, RESPA authorizes only monetary damages for any violations. 12 U.S.C. § 2605(f)(1)(A).

Defendant states that she completed and submitted a loss mitigation application to Selene on September 7, 2018, but Selene has yet to respond to the application. Defendant submits a confirmation email purporting to show that she submitted the loss mitigation application, but it is unclear what documents were provided; the confirmation page states that sixteen pages were delivered, but only provides eleven pages of documents as part of the exhibit. Even if it

14

were the case that defendant submitted a complete loss mitigation application to Selene within the regulatory timeframe and Selene failed to respond, or if defendant submitted an incomplete loss mitigation application and Selene failed to notify defendant of additional documents needed to make the application complete, 12 C.F.R. § 1024.41(b)(2)(i)(B), defendant's relief would be monetary damages and not equitable relief, as defendant now seeks.

Defendant failed to establish that the motion judge abused her discretion in denying the motion to vacate the Second Final Judgment of Foreclosure. Whether or not defendant filed a loss mitigation application, defendant has not demonstrated "mistake, inadvertence, surprise, or inexcusable neglect" which would warrant vacation under Rule 4:50-1(a). There is no new evidence that would have altered the outcome because defendant's property would still be foreclosed and if Selene improperly failed to respond to defendant's loss mitigation application, defendant would only be entitled to monetary damages and not a stay of the sheriff's sale. Defendant does not allege that the PHH or Selene made false representations to induce defendant's reliance. The Second Final Judgement of Foreclosure is not void, nor has there been a change in circumstances after the entry of the Final Judgment of Foreclosure that would result in an extreme or unexpected hardship for defendant.

A-4907-18

II.

Defendant asserts numerous arguments on appeal relating to her mortgage, the validity of the default, and the institution of the escrow account because of the alleged failure to pay property taxes, which fall outside the issues addressed in the June 6, 2019 order. Defendant is procedurally barred from raising such arguments.

"An appeal from a final judgment must be filed with the Appellate Division within forty-five days of its entry[.]" Lombardi v. Masso, 207 N.J. 517, 540 (2011) (citing Rule 2:4-1(a)). Where an appeal is filed beyond the time limit, "the court normally lacks jurisdiction over the matter and it must be dismissed." In re Christie's Appointment of Perez as Public Member 7 of Rutgers Univ. Bd. of Governors, 436 N.J. Super. 575, 584 (App. Div. 2014). However, even in circumstances where appeals have not been timely filed, our courts may decide issues presented which touch upon "issues of genuine public importance[.]" Id. at 585.

Defendant appealed the June 6, 2019 order on July 12, 2019, which is within the forty-five days required by Rule 2:4-1(a). That order provided that PHH did have standing, reinstated the Second Final Judgment of Foreclosure against defendant, and transferred the file back to the Office of Foreclosure. On

February 2, 2020, defendant filed an amended notice of appeal and case information statement which added that she was appealing the Second Final Judgment of Foreclosure and the November 13, 2014 order, as well as the June 6, 2019 order. Both the Second Final Judgment of Foreclosure and the November 13, 2014 order are well beyond the forty-five-day time limit, and there is nothing to suggest that the issues raised are "of genuine public importance[.]" In re Christie, 436 N.J. Super. at 585; see Jacobs v. N.J. State Highway Auth, 54 N.J. 393, 396 (1969) (addressing compulsory retirement policy of the State Highway Authority because of "the importance of the public question involved"); In re Rodriguez, 423 N.J. Super. 440, 447-48 (App. Div. 2011) (addressing "allegations of correctional officers' use of excessive force" despite being time-barred because it was "a matter of public importance and interest").

As a result, this court does not have jurisdiction to address the specific arguments raised pertaining to the Second Final Judgment of Foreclosure and the November 13, 2014 order dismissing defendant's answer and claims with prejudice, nor do they present a basis for vacating the June 6, 2019 order. We nevertheless add the following remarks on the merits of defendant's contentions.

17

Defendant asserts that MERS was unable to assign the mortgage to PHH because it was not an agent of PHH, and that MERS could not be an agent without a power of attorney. This court has recognized in previous circumstances that MERS's role as a nominee creates an agency relationship. See Raftogianis, 418 N.J. Super. 347 (noting that MERS, as nominee, "does not have any real interest in the underlying debt, or the mortgage which secured that debt. It acts simply an agent or 'straw man' for the lender"). A power of attorney is not necessary in this case.

Defendant asserts that the trial judge overlooked the December 4, 2013 Consent Order between New Jersey and PHH. However, there is no evidence in the record to suggest that defendant fell within any of the borrower categories provided for in the Consent Order which would entitle her with relief. And even if it were the case that defendant was identified as one of the borrowers that fell within the categories proscribed by the Consent Order, the Consent Order only provides that those borrowers would receive restitution payment, not that defendant would have been shielded from her default or that the sheriff's sale would have been stayed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4907-18