687 A.2d 1045

ROBERT J. TRIFFIN, PLAINTIFF–APPELLANT, v. CIGNA
INSURANCE COMPANY DEFENDANT–RESPONDENT,
AND JAMES MILLS, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued January 14, 1997—Supplemental Briefs Submitted January
16 and January 17, 1997—Decided February 4, 1997.

Appellant *Robert J. Triffin* argued pro se.

*Christina M. McNally* argued the cause for respondent (*Bernadette A. Duncan,* attorney: *Ms. McNally,* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Plaintiff, Robert J. Triffin, appeals from a Special Civil Part summary judgment dismissing his complaint for payment of a draft of defendant Cigna Insurance Company transferred to plaintiff by a holder in due course after Cigna had stopped payment on the instrument.

The facts appear to be uncontroverted. The defaulting defendant, James Mills, received a draft in the amount of $484.12, dated July 7, 1993 from one of Cigna's constituent companies, Atlantic Employers Insurance Company. The draft had been issued for workers' compensation benefits. Mills falsely indicated to the issuer that he had not received the draft due to a change in his address and requested that payment be stopped and a new draft issued by defendant. The insurer complied and stopped payment on the initial draft. Mills nevertheless negotiated the initial draft to plaintiff's assignor, Sun Corp. t/a Sun's Market, before the stop payment notation was placed on the draft. All appear to agree that Sun Corp. was a holder in due course. Sun Corp. presented the draft for payment through depositary and collecting banks. The issuer's bank dishonored the draft in accordance with its customer's direction, stamped it "Stop Payment," and returned the draft to Sun Corp. There is no question that had Sun Corp. at that point pressed its claim against the insurer as the issuer of the instrument, Sun Corp. would have been entitled to a judgment because of its status as a holder in due course.[1]

---

[1] Contrary to defendant's claim in its supplemental brief, the issuer was not then, nor was it thereafter, discharged on the instrument with respect to a holder in due course, notwithstanding the instrument's dishonor. *See N.J.S.A.* 12A:3–601 and the pre-amendment 12A:3–602.

Thereafter, plaintiff, who apparently is in the business of purchasing dishonored instruments, obtained an assignment of Sun Corp.'s interests in this instrument and proceeded with this law suit. Plaintiff does not contend that he is a holder in due course of the instrument by virtue of it being negotiated to him for value, in good faith, without notice of dishonor, under the former holder in due course statute, *N.J.S.A.* 12A:3–302(1), nor under the present statute, *N.J.S.A.* 12A:3–302a(2).

Such negotiation is, of course, only one way for a holder to claim the status of a holder in due course. There exists a second method by which one may become a holder in due course. The shelter provisions of former *N.J.S.A.* 12A:3–201(1), which was in effect when plaintiff obtained his assignment of this instrument, state clearly that "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein...." Official Comment 3 to that section sets to rest any question of whether this section applies to the transfer by assignment of the rights of a holder in due course. The Comment reads: "A holder in due course may transfer his rights as such.... [The former Negotiable Instruments Law section's] policy is to assure the holder in due course a free market for the paper, and that policy is continued in this section." Example (a) following this comment could have been drawn from this case, but is even stronger because it adds an element of fraud and posits a gratuitous transfer rather than a purchase, as in our case:

(a) A [Mills] induces M [Cigna] by fraud to make an instrument payable to A. A negotiates it to B [Sun Corp.], who takes as a holder in due course. After the instrument is overdue B gives it to C [plaintiff], who has notice of the fraud. C succeeds to B's rights as a holder in due course, cutting off the defense.

If the 1995 amendments are to be given retroactive effect,[2] the law governing the rights of a transferee who merely has accepted

---

[2] There is some authority to suggest that the amendments should be given retroactive effect where it appears that the changes are merely declarative of the law. *See Carnegie Bank v. Shalleck,* 256 *N.J.Super.* 23, 35–42, 606 A.2d 389 (App.Div.1992). We need not reach that issue in this case, since both the old and new statutes have similar provisions.

the transfer of the instrument is now found in *N.J.S.A.* 12A:3–203b. It restates the principle of the former Official Comment 3, example (a), as substantive law. This section states:

> Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, *including any right as a holder in due course....*
>
> [Emphasis added].

The Uniform Commercial Code Comment 2 to this section similarly states:

> Under subsection (b) a holder in due course that transfers an instrument transfers those rights as a holder in due course to the purchaser. The policy is to assure the holder in due course a free market for the instrument.

Again, Uniform Commercial Code Comment 4, Case # 1, tracks the case before us.[3]

These sections could not be clearer. Plaintiff received by assignment the right of a holder in due course to this instrument, which apparently had been presented and then dishonored because of defendant's stop payment order. The draft itself remained the basis of a claim upon which plaintiff or its assignor had three years to sue after the dishonor of the draft or ten years after the date of the draft, whichever period expired first. *N.J.S.A.* 12A:3–118c. The former governing section, *N.J.S.A.* 12A:3–122(3), merely stated that the cause of action on the draft accrued upon dishonor, whereupon the normal contract statute of limitations would have started to run. Because the draft in this case was dishonored on or about July 12, 1993, and this action commenced August 28, 1995 both the old and new statutes were

---

[3] Defendant in its supplemental brief refers to Case # 4, which deals with a purchaser who has notice of a defense before obtaining the payee's endorsement. Such a transferee could not be a holder in due course, and therefore, could not transfer those rights to an assignee. In this case, Sun Corp. took the instrument without notice of dishonor, and therefore Sun Corp. could transfer its rights as a holder in due course to plaintiff.

Also, both the old and new sections have exceptions where the transferee participated in the fraud or where the instrument is then reconveyed to the party who originally committed the fraud. Neither exception applies to this case.

satisfied. Defendant's murky statement in its brief that "Sun Corp. held onto the dishonored check for over two years ... before [plaintiff's] purchase" is therefore the addition of a meaningless fact.

The summary judgment appealed from is reversed, and the matter is remanded with directions to enter judgment in favor of plaintiff, with interest.