821 A.2d 92 (2003)
359 N.J. Super. 543
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
Adele JOHNSTON, Individually and as tenants by the entireties with Theodore C. Johnston; Theodore C. Johnston, Individually and as tenants by the entireties with Adele Johnston, Defendants-Respondents, Sam Curtis, a/k/a/ Samuel Curtis, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted February 5, 2003.
Decided March 21, 2003.
*93 Robert J. Triffin, appellant pro se.
No brief was submitted on behalf of Adele Johnston and Theodore C. Johnston.
No other parties participated in this appeal.
Before Judges KESTIN, EICHEN and WEISSBARD.
The opinion of the court was delivered by EICHEN, J.A.D.
Plaintiff, Robert J. Triffin, appeals from an order of the Special Civil Part, Small Claims Section, dismissing his complaint following a bench trial.
Plaintiff is in the business of buying dishonored checks from licensed check cashers and enforcing them free of personal defensesbased on his claimed status as an assignee of a holder in due course under N.J.S.A. 12A:3-203. See generally Triffin v. Cigna Ins. Co., 297 N.J.Super. 199, 687 A.2d 1045 (App.Div.1997); see also Triffin v. Quality Urban Housing Partners, 352 N.J.Super. 538, 542, 800 A.2d 905 (App.Div.2002). It is the purchase of such checks that has given rise to this action.
On October 17, 2001, plaintiff, acting pro se, filed a complaint in the Special Civil Part against Adele Johnston, her husband, Theodore Johnston (the Johnstons), and Sam Curtis, seeking to enforce two checks made out to Curtis by Adele Johnston.
On November 26, 2001, the Johnstons filed an answer to the complaint, asserting in defense that the goods or services for which the checks were issued were not received or were defective. The matter was tried in the Small Claims Section of the Special Civil Part on January 15, 2002.
These are the relevant facts. The checks plaintiff sought to enforce were signed by defendant Adele Johnston and were made payable to Curtis pursuant to an agreement wherein Curtis promised to build a concrete and brick walkway at the Johnstons' home for $1,200. On April 30, 2001, the Johnstons gave Curtis check # 2204 in the sum of $520, and on May 1, 2001, they gave him check # 2205 in the sum of $400. The work was expected to take only two days to complete. On May 2, 1991, the Johnstons noted that the work had been only partially completed, and was unacceptable in quality. Accordingly, on May 3, 2001, Theodore Johnston went to Shrewsbury State Bank (Shrewsbury) and stopped payment on the checks. His account, therefore, was never debited.
In the meantime, Curtis had endorsed the checks and taken them to Walstein Financial Services, LLC d/b/a/ United Check Cashing (Walstein Financial), a licensed check casher, which gave Curtis the full amount of the checks, minus a 2% fee, and then stamped them for deposit in its own bank. The deposits were dated April 30 and May 1, 2001. Thereafter, the checks were returned to Walstein Financial *94 stamped "Payment Stopped" by Shrewsbury.
About two weeks after the Johnstons issued the checks, Walstein Financial's principal, Jeffrey Walstein, visited the Johnstons at home and observed for himself the defective workmanship and learned of the reason why the Johnstons had stopped payment on the checks. According to the Johnstons, after viewing the walkway, Walstein telephoned Curtis in their presence and told Curtis that he could see that the job was not satisfactory and was not completed. The Johnstons testified that Walstein then told them he would work to recover the money from Curtis.[1] There was no further evidence on whether the money was ever recovered from Curtis by Walstein.
Plaintiff testified that on October 3, 2001, he purchased the checks from Walstein Financial for $138 pursuant to two assignment agreements (assignments). Plaintiff acknowledged that both checks were stamped "Payment Stopped" when he received them. The assignments recited that the principal sums of $520 and $400 "presently due and owing Seller" (Walstein Financial) were assigned to "Buyer" (plaintiff) and identified the Johnstons and Curtis as "Debtors." The assignments did not refer to any checks, but noted at the bottom respectively, "# 2261" and "#2262." These numbers were not the check numbers of the Johnstons' checks. The assignments also stated: "Seller represents and warrants to Buyer that there are no set-offs, counterclaims, abatements, and/or defenses cognizable at law or equity which will render the referenced claim legally unenforceableor reduced in amountas against any of the identified Debtor(s), or any parties that may be secondarily liable on the referenced claim."
At the conclusion of the trial, although the judge acknowledged the decisional law that permits an assignee of a holder in due course to enforce checks against drawers, see, e.g., Triffin v. Cigna Ins. Co., supra, 297 N.J.Super. at 201, 687 A.2d 1045, he nonetheless questioned the validity of the assignments, noting that they were copies that had been altered by taping over and adding language. The judge also observed that the numbers at the bottom of the assignments (# 2261 and # 2262) did not correspond to the numbers on the Johnstons' checks (#2204 and #2205). In addition, the judge pointed out that Walstein's signature was a copy. Finding a genuine question as to the authenticity of the assignments, and noting the absence of any testimony from Walstein, the court entered judgment for the Johnstons. It concluded that plaintiff had failed to satisfy his burden of proof with respect to the validity of the assignment, and entered judgment in favor of defendants Johnstons.
In so ruling, the judge further observed that certain warranties made in the assignments probably had been violated because, at the time of the assignments, Walstein Financial's principal knew that payment had already been stopped on the checks and knew that the Johnstons had defenses to any claim by Curtis. At the conclusion of the case, the judge also dismissed the complaint against Curtis.[2] *95 On January 28, 2002, plaintiff filed a notice of motion seeking to supplement the trial record with the affidavit of Jeffrey Walstein and his own certification by which he sought to demonstrate the authenticity of the assignments. The motion also sought the return of plaintiff's trial evidence and reconsideration of the court's decision.
The affidavit from Walstein stated that he had cashed the "identified dishonored check" (singular) in good faith and assigned it to plaintiff, and that the assignment agreement (singular) attached to plaintiff's complaint constituted the entire agreement between them. Plaintiff's certification explained the reason for the taped sticker on the two assignments and the use of a copy of Walstein's signature, but did not explain why the numbers on the assignments did not correspond to the numbers on the checks, or why the assignments did not refer specifically to the checks. On March 18, 2002, the judge denied plaintiff's motion and this appeal followed.[3]
On appeal, plaintiff makes the following arguments:
POINT I
THE TRIAL COURT'S FAILURE TO GIVEN (sic) PLAINTIFF ADVANCE NOTICE AN OPPORTUNITY TO RESPOND TO THE COURT'S SUA SPONTE POST TRIAL ALLEGATION OF AN (sic) GENUINE ISSUE AS TO THE AUTHENTICITY OF PLAINTIFF'S ASSIGNMENT AGREEMENTS, CONSTITUTES A FUNDAMENTAL VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS AND AS WELL AS REVERSIBLE ERROR.
POINT II
GIVEN THE FACTS OF THIS CASE, THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT DENIED PLAINTIFF'S OMNIBUS MOTION TO SUPPLEMENT THE RECORD WITH THE AFFIDAVIT OF PLAINTIFF'S ASSIGNOR, AND OR (sic) RECONSIDERATION OF THE COURT'S JUDGMENT IN FAVOR OF THE DEFENDANTS.
POINT III
THE RECORD, AND THE OFFERED AFFIDAVIT FROM PLAINTIFF'S ASSIGNOR, ESTABLISH THAT PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST THE DEFENDANTS.
POINT IV
WITHOUT ANY SHOWING OF NEED, THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO RETURN PLAINTIFF'S EXHIBITS.[4]
We first consider plaintiff's argument that the court erred by raising the issue of the genuineness of the assignments *96 after the trial had concluded without permitting him to respond. Plaintiff contends that he was entitled to have the opportunity to respond and the court should have reconsidered its decision and allowed him to supplement his proofs through the affidavit of Walstein and his own certification.
Plaintiff relies on R. Wilson Plumbing & Heating, Inc. v. Wademan, 246 N.J.Super. 615, 617, 588 A.2d 444 (App.Div.1991), in which we held that the trial court had violated procedural due process by entering judgment against a party on a cause of action never pleaded or tried, but conceived by the judge only after submission of the case to him for decision. See also Rivera v. Gerner, 89 N.J. 526, 536-38, 446 A.2d 508 (1982) (acknowledging that a defense may sometimes be permitted though not pleaded, but finding surprise and prejudice in the court's raising the statutory defense of qualified municipal immunity for the first time after summation).
Plaintiff's reliance on these decisions is misplaced. Plaintiff had the burden of demonstrating that Walstein Financial was a holder in due course at the time it paid on the checks and that the assignments by Walstein Financial of its rights to plaintiff were valid assignments. See Triffin v. Quality Urban Housing Partners, supra, 352 N.J.Super. at 543, 800 A.2d 905.[5] In Quality, this court remanded "for consideration of the validity of the assignment [there involved,] subject to such additional proofs as the trial court in its discretion shall allow." Ibid.
In that case, plaintiff had not introduced the assignment into evidence and, therefore, the trial court had not considered or addressed its validity "at all." Ibid. In this case, it is apparent plaintiff knew that the authenticity of the assignments was a critical fact to be proved at trial as reflected by his attaching them to his complaint, and his seeking admission of the "originals" into evidence at trial. Indeed, he expressly relied on them as the basis for the transfer to him of Walstein Financial's rights as a holder in due course. Given these circumstances, we are satisfied the judge was not required, as factfinder, to inquire of plaintiff about all the aspects of the assignments that might be the basis for the judge's ultimate finding that the agreement lacked authenticity. It was plaintiff's burden to have demonstrated before the close of his proofs that the assignments were valid and enforceable. Accordingly, we reject plaintiff's "due process" argument.
Further, we have reviewed the court's rejection of plaintiff's motion for reconsideration and conclude that the judge did not abuse his discretion in denying the motion. See Marinelli v. Mitts & Merrill, 303 N.J.Super. 61, 77, 696 A.2d 55 (App.Div.1997). Although both Walstein's affidavit and Triffin's certification offered an explanation bearing upon the irregularities appearing on the face of the assignments, the explanation was insufficient. The Walstein affidavit initially states that he had transferred to plaintiff all of Walstein Financial's interest in checks described in the plural, as "No. 2204 and No. 2205." It then refers to the checks throughout the remainder of the affidavit in the singular as "the identified dishonored check," "the referenced check," "the recorded check" *97 and "the underlying dishonored check." In addition, Walstein's affidavit did not expressly respond to the court's concern that the numbers jotted on the bottom of the assignments were different from the numbers on defendants' checks. This was significant because the assignments referred only to claims or amounts due and owing, not to a negotiable instrument. Hence, the inconsistent references to multiple and singular checks created additional doubt concerning the genuineness of the assignments, especially when viewed together with the altered names and signatures. Thus, even with the additional evidence proffered in support of plaintiff's motion for reconsideration, the proffer would not have assuaged the court's doubt as to whether the checks had been validly assigned to plaintiff. Arguably, even if it was error not to grant reconsideration in light of plaintiff's supplemental proofs, the error was harmless where the proffered evidence, if found credible, would not have dictated a different result.
We also reject plaintiff's argument that the court abused its discretion by retaining four exhibits as without merit.
The court rules provide, in pertinent part:
Following the conclusion of trial, evidence shall be returned to the proponent and so acknowledged on the record unless the court otherwise orders. The record shall note any exhibits retained by the court. All evidence shall be preserved pending direct appeal and proceedings on certification, and shall be made available for inclusion by any party in the record on appeal.

[R. 1:2-3.]
This rule continues the long established civil practice of "permitting the trial court to have exhibits retained or not and requiring record notation of the disposition of all non-retained exhibits." Pressler, Current N.J. Court Rules, comment on R. 1:2-3 (2003). It reflects a change only from earlier criminal practice, where the court clerk was required to retain the exhibits until expiration of the time for appeal or, if appeal was taken, its disposition. Ibid. Retention of large numbers of exhibits created physical problems. Ibid.
This rule does not provide, as plaintiff states, without supporting citations, that the court "is generally required to return the exhibits to the respective parties." Instead, this rule merely sets up a presumption that evidence "shall be returned ... unless the court otherwise orders." R. 1:2-3. It does not require the court to give reasons for retaining exhibits. Therefore, plaintiff's argument that the court failed to show need is without merit. In any event, plaintiff does not suggest how he was prejudiced by the court's retention of the exhibits.
In light of the basis of our disposition of this appeal, we do not address and resolve the nettlesome question of whether plaintiff should be permitted to enjoy the status of a holder in due course even if the assignment had been in proper form, given the particular circumstances here presented. We particularly note the absence of testimony from Walstein concerning whether Curtis had ever "made good" on the checks. See N.J.S.A. 12A:3-602 (reciting the effect of payment on the enforceability of an instrument).
Nor do we regard this case to be an appropriate vehicle for questioning the applicability of the holder in due course doctrine to persons in the business of purchasing dishonored checks. The Legislature may wish to address this problem.
Affirmed.
NOTES
[1] Walstein was not a witness at the trial. The court admitted this evidence without any hearsay objection. However, in the Small Claims Section of the Special Civil Part, rules of evidence may be relaxed to admit relevant and trustworthy evidence in the interest of justice. See N.J.R.E. 101(a)(2)(A).
[2] It is possible that Curtis was never served. See Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 79 n. 1, 777 A. 2d 993 (App.Div. 2001) (stating that the same plaintiff never served any of the payees, although he named them as defendants).
[3] The matter was tried on January 15, 2002 and the Clerk of the Special Civil Part entered a judgment on the record. Thereafter, the judge instructed plaintiff to prepare and submit an order to the court with a copy to defendants. Apparently, no order memorializing the court's decision was ever received by the court and, on April 24, 2002, the court prepared its own order which was filed after defendant filed his notice of appeal on April 17, 2002.
[4] The judge retained four exhibits in the custody of the clerk, P-1 through P-4, which were the two checks and the two assignments. The judge told plaintiff that when any appeal was either waived or resolved, he could apply for their return.
[5] Although we had not decided Quality at the time of the trial of this matter, its holding did not establish new principles of law. See N.J.S.A. 12A:3-203b cmt. 2 (setting forth the requirement that the transferee of a negotiable instrument, who is not a holder because the transferor did not indorse the instrument, must prove his or her right to payment of the instrument by proving the transaction through which he or she acquired the instrument).