95 A.3d 807

ROBERT J. TRIFFIN, PLAINTIFF, v. MARYLAND CHILD
SUPPORT ENFORCEMENT ADMINISTRATION, AND
RASHAD JEMAL CHRISTMAS, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County
Special Civil Part

Decided March 31, 2014.

*Robert J. Triffin,* plaintiff pro se.

*Jonathan Pomerance* of the Maryland bar, admitted pro hac vice, for defendant Maryland Child Support Enforcement Administration.

PISANSKY, J.S.C.

This matter requires the court to determine the outcomes of three pending motions. The first is a motion to vacate default judgment filed by defendant Child Support Enforcement Administration ("CSEA") on September 18, 2013. The second, also filed on September 18, 2013, is CSEA's motion to dismiss the complaint of plaintiff Robert Triffin ("Triffin"), or in the alternative, to grant defendant summary judgment. The third is a motion for turnover of funds filed by Triffin on October 8, 2013. The court heard oral argument on all three motions on October 28, 2013, and the two parties submitted supplemental briefs to the court in the weeks

following the oral argument date. The court's findings and decisions follow.

*Facts*

The facts in this case are not in dispute. On October 19, 2012, CSEA issued a check, No. 038970942 ("the check"), to defendant Rashad Jemal Christmas ("Christmas") in the amount of $544. The face of the check contained a notation which stated "VOID AFTER 90 DAYS." Christmas cashed the check at Friendly Cash Checking Corporation ("Friendly") in Madison, New Jersey on October 23, 2012.

On February 27, 2013, 131 days after the date the check was issued, Friendly tendered the check to Bank of America for cashing. The check was dishonored by Bank of America and marked "REFER TO MAKER." Friendly subsequently assigned the check to Triffin for value on March 13, 2013.

Triffin filed the complaint against CSEA and Christmas on April 5, 2013. Service was effectuated through regular and certified mail to both defendants. Triffin's complaint included a certification of diligent inquiry in which Triffin explained that he placed a call to CSEA and, after learning CSEA no longer had a place of business in New Jersey, believed he could properly make service upon CSEA directly through the mail in accordance with *Rule* 4:4–4(b)(1). A card was subsequently sent to Triffin by the court indicating that CSEA and Christmas would be placed into default subject to *Rule* 6:6–2 on May 20, 2013, absent a response in the form of an answer to the complaint from the respective parties. CSEA's first response to the complaint came on June 27, 2013, in the form of an affidavit which was considered a motion to dismiss the complaint with prejudice for failure to properly serve CSEA in compliance with the Maryland Tort Claims Act, MD.CODE ANN., STATE GOV'T 12–108(a). CSEA's motion to dismiss was denied after the court heard oral argument on the motion on July 15, 2013.

Both CSEA and Christmas remained in default beginning May 20, 2013, because they failed to supply an answer within the time period specified by *Rule* 6:3–1. As such, Triffin submitted an affidavit and supporting documents seeking entry of default judgment against CSEA and Christmas pursuant to *Rule* 6:6–3. Judgment was entered on August 1, 2013, against CSEA and Christmas in the total amount of $756.41.

Jonathan Pomerance ("Pomerance"), Assistant Attorney General for the State of Maryland, submitted an application to practice in New Jersey pro hac vice on September 18, 2013, and was admitted to practice in New Jersey pro hac vice by order dated September 23, 2013. The three motions addressed in this opinion were filed by the parties shortly after Pomerance's pro hac vice admission.

*CSEA's Motion to Vacate Default Judgment*

*Contentions of the Parties*

CSEA's motion centers on the argument that Triffin did not effectuate proper service. CSEA cites *Rule* 4:4–4(b)(1) for the proposition that service by mail must be preceded by an affidavit setting forth the reasons why personal service cannot be effectuated. CSEA, citing *Rule* 4:4–4(a)(7) and Maryland Court Rule 3–124(k), also argues that Triffin should have served the Attorney General of the State of Maryland in order to effectuate proper service. CSEA notes that the United States Supreme Court has held that a meritorious defense need not be shown as a matter of due process if service of process is defective. *See Peralta v. Heights Med. Ctr. Inc.*, 485 *U.S.* 80, 86–87, 108 *S.Ct.* 896, 899, 99 *L.Ed.*2d 75, 82 (1988); *see also Berger v. Paterson Veterans Taxi Service*, 244 *N.J.Super.* 200, 205, 581 *A.*2d 1344 (App.Div.1990) ("where initial service of process was so defective that the judgment is void for want of in personam jurisdiction, the resulting void default judgment must ordinarily be set aside").

CSEA also offers, in the alternative, arguments to show excusable neglect and a meritorious defense. CSEA explains that its

excusable neglect in failing to submit an answer was the result of Pomerance's delay in procuring a New Jersey attorney to sponsor his pro hac vice application. CSEA's meritorious defense, found in its concurrently filed motion to dismiss plaintiff's complaint, is that the check was stale and void at the time Friendly presented it to Bank of America.

CSEA expands upon the potential meritorious defenses raised in its motion to vacate default judgment in its motion to dismiss Triffin's complaint. CSEA emphasizes its belief that Triffin's service of process upon CSEA was defective, again citing *Rule* 4:4–4(b)(1) and *Rule* 4:4–4(a)(7) in support of the allegedly defective service. CSEA also advances a defense based on the timing of Friendly's attempt to deposit the check with Bank of America on February 27, 2013. CSEA argues that it is entitled to judgment as a matter of law pursuant to *Rule* 4:46–2(c) because Triffin is seeking to collect on a stale check. CSEA maintains that there was no evidence of wrongful dishonor because the face of the check set the terms under which a holder could deposit the check.

CSEA further bolsters its defense concerning the check in its supplemental brief. CSEA argues that Triffin cannot obtain holder in due course status under *N.J.S.A.* 12A:3–302 because that statute requires that the transferee accept the instrument "for value, in good faith, without notice that the instrument is overdue or has been dishonored[.]" As there is no factual dispute that Triffin received the check with notice that the check was overdue on its face and dishonored, CSEA maintains Triffin cannot become a holder in due course under this statute. CSEA also contends that, assuming arguendo Triffin became a holder in due course under the "shelter rule," Triffin cannot be transferred a right greater than that held by Friendly. *See N.J.S.A.* 12A:3–203. CSEA concludes that Friendly had no right to enforce the check after the ninety day period printed on the face of the check and therefore Triffin was also not able to enforce the check after that time period. CSEA notes that its obligation as the drawer of the check is governed by *N.J.S.A.* 12A:3–414(b), which states:

> If an unaccepted draft is dishonored, the drawer is obliged to pay the draft *according to its terms at the time it was issued,* or, if not issued, at the time it first came into possession of a holder, or if the drawer signed an incomplete instrument, according to its terms when completed, to the extent stated in 12A:3-115 and 12A:3-407.
>
> [ (emphasis added).]

CSEA argues that the terms of the check stated that the check would be "VOID AFTER 90 DAYS." CSEA concludes that the check was therefore void on January 17, 2013, and CSEA had no further obligation to any holder or holder in due course of the check after that time.

Triffin counters CSEA's motion by challenging the form of CSEA's motion, namely CSEA's failure to include a meritorious defense in the motion and the motion's nonconformance with the motion practice rules as set forth in *Rule* 6:3-3(c).

Triffin's supplemental brief disputes CSEA's claim that Triffin is barred from recovering on the check due to the "VOID AFTER 90 DAYS" language printed on the face of the check. Triffin first cites *City Check Cashing v. Manufacturers Hanover Trust Co.,* 166 *N.J.* 49, 62, 764 *A.*2d 411 (2001) to establish that absent a special relationship between the parties forged by contract or agreement, the sole remedies in the check collection area are found under the Uniform Commercial Code ("UCC"). Triffin cites to a provision of the New Jersey UCC, *N.J.S.A.* 12A:3-118(c):

> Except as provided in subsection d. of this section, an action to enforce the obligation of a party to an unaccepted draft to pay the draft must be commenced within three years after dishonor of the draft or 10 years after the date of the draft, whichever period expires first.

Triffin notes that nowhere in New Jersey's UCC is the drawer of a check permitted to unilaterally shorten this or any provision of the UCC. Triffin concludes, therefore, that CSEA's claim that it successfully shortened the statute of limitations to bring an action concerning the check from three years to three months is without legal merit.

Triffin also takes issue with CSEA's concerns with Triffin's service of process, asserting that CSEA has cited no case law which states that CSEA needed to be served in the same manner

as the State of New Jersey. He also contends that he properly served CSEA under *Rule* 6:2–3. Finally, Triffin argues that CSEA cannot show that Triffin's statutory recoupment claim is not cognizable as an enforceable claim. The court also notes that Triffin's complaint cites to *Triffin v. Cigna Insurance Co.*, 297 *N.J.Super.* 199, 687 *A.*2d 1045 (App.Div.1997) to support his claim as a holder in due course.

*Legal Analysis*

■ The law regarding vacating default judgment pursuant to *Rule* 4:50–1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." *Mancini v. EDS*, 132 *N.J.* 330, 334, 625 *A.*2d 484 (1993) (citation omitted). The decision whether to grant such a motion is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Ibid.* All doubts, however, should be resolved in favor of the party seeking relief. *Ibid.; Davis v. DND/Fidoreo, Inc.*, 317 *N.J.Super.* 92, 99, 721 *A.*2d 312 (App.Div.1998).

■ Applications to vacate default judgment are "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *Marder v. Realty Constr. Co.*, 84 *N.J.Super.* 313, 319, 202 *A.*2d 175 (App. Div.), *aff'd*, 43 *N.J.* 508, 205 *A.*2d 744 (1964). A default judgment will not be disturbed unless 1.) the neglect to answer or otherwise appear and defend was excusable under the circumstances, and 2.) the defendant has a meritorious defense, either to the cause of action itself or, if liability is not disputed, to the quantum of damages assessed. *Baumann v. Marinaro*, 95 *N.J.* 380, 394, 471 *A.*2d 395 (1984); *Court Investment Co. v. Perillo*, 48 *N.J.* 334, 345, 225 *A.*2d 352 (1966); *Marder, supra*, 84 *N.J.Super.* 318–19, 202 *A.*2d 175. When the mistake or neglect has resulted in a default judgment, the defendant's motion will be granted upon a showing of an objective and understandable reason for the initial failure to respond. *Bernhardt v. Alden Cafe*, 374 *N.J.Super.* 271, 277, 864

A.2d 421 (App.Div.2005); *Tradesmens Nat'l Bank & Trust Co. v. Cummings*, 38 *N.J.Super.* 1, 3, 118 A.2d 80 (App.Div.1955). Several cases have liberally construed the term excusable neglect. *See Febus v. Barot*, 260 *N.J.Super.* 322, 326, 616 A.2d 933 (App. Div.1992); *Aponte v. Williard*, 229 *N.J.Super.* 490, 495, 551 A.2d 1054 (App.Div.1989). Despite the generally liberal construction of the term, excusable neglect or mistake leading to a default will not be recognized when the conduct was merely careless and reflected a lack of diligence or planning, especially by a corporate defendant. *Mancini, supra*, 132 *N.J.* at 335, 625 A.2d 484.

■ Finally, as CSEA has correctly asserted, the condition of a meritorious defense is not required as a matter of due process if the default was procured on the basis of defective service of process. *Peralta, supra*, 485 *U.S.* at 86–87, 108 *S.Ct.* 896, 899, 99 *L.Ed.*2d 75, 82.

■ The court's analysis must begin with determining the sufficiency of Triffin's service of process upon CSEA. *Rule* 6:2–3 outlines the method by which service can properly be accomplished in the Special Civil Part. Its language instructs the court that service of all process outside the State of New Jersey may be made in accordance with *Rules* 4:4–4 and 4:4–5. *Rule* 4:4–4(b)(1) allows for service by mail outside New Jersey if an affidavit of inquiry is filed with the court meeting the requirements in *Rule* 4:4–5(b). *Rule* 4:4–5(b) generally requires that this inquiry be done in person or by letter, and that the resulting affidavit must explain the details of the inquiry.

Triffin's certification of diligent inquiry, filed as an attachment to the complaint, does not fully comply with the requirements of *Rule* 4:4–5(b). Triffin's inquiry was done through a telephone call rather than in person or by letter as required by the Rule. Regardless, this court finds that Triffin's inquiry was sufficient under the circumstances as it was reasonably contemplated to achieve the goal of effecting actual notice upon CSEA. In fact, Triffin's certification of diligent inquiry explains that Triffin's telephonic inquiry allowed him to determine the proper method of

service upon CSEA because CSEA no longer had a place of business within the State of New Jersey. CSEA correctly points out that Triffin's certification also fails to explain why he was unable to effectuate personal service upon CSEA, but it is clear based on the history of this case that CSEA obtained fair notice of this action through the mail well within the necessary timeframe to allow CSEA to file a timely answer. Service by mail outside of New Jersey, effected by the Clerk of the Union County Special Civil Part pursuant to *Rule* 6:2–3, was therefore appropriate in this matter as it achieved the purpose of putting CSEA on notice of Triffin's claim.

■ CSEA's secondary challenge to the validity of Triffin's service, which relies on *Rule* 4:4–4(a)(7), also falls short. *Rule* 4:4–4(a)(7) specifically deals with suits brought against the State of New Jersey. CSEA, a department of the government of the State of Maryland, is plainly not entitled to the protections afforded by this Rule. This court is also not persuaded by CSEA's contention that Triffin should be bound by the sister statute in Maryland Court *Rule* 3–124(k), which requires all actions against the State of Maryland be served upon the Attorney General of the State of Maryland. No part of this action is being litigated in Maryland and the Maryland Court Rules are inapplicable to the case at bar. The default judgment cannot be vacated under this theory.

■ After considering CSEA's claim of improper service, the court's analysis of CSEA's motion to vacate the default judgment now shifts to the traditional *Marder* standard cited above. In order to be successful, CSEA must show excusable neglect and a meritorious defense to the complaint.

CSEA explains that the current posture of the case is due to CSEA's excusable neglect in procuring a New Jersey attorney to sponsor Pomerance's pro hac vice application to represent CSEA in this matter. As discussed in the cases above, the court must determine whether CSEA and Pomerance showed reasonable diligence and care in its attempt to defend against plaintiff's complaint. The complaint was filed on April 5, 2013, and CSEA

defaulted on May 20, 2013. On June 27, 2013, over a month after CSEA entered into default, Pomerance filed an affidavit with the court from Joyce Miller, the Director of the Insurance Division in Maryland State Treasurer's Office. The affidavit stated that Triffin had not complied with Maryland's Tort Claims Act. The affidavit was treated as a motion to dismiss Triffin's complaint by both Triffin and the court. Triffin submitted opposition to CSEA's motion and oral argument was set for July 15, 2013. CSEA failed to appear for the motion hearing and the motion was denied. It was not until September 18, 2013, another two months after CSEA's motion was denied, a month and a half after Triffin had been granted a default judgment, and five and a half months after Triffin's complaint was filed, that Pomerance finally filed his application for pro hac vice admission in this court.

Despite viewing CSEA's claim of excusable neglect due to difficulty in procuring the support of a New Jersey attorney for Pomerance's pro hac vice application with great liberality, this court finds CSEA has not shown excusable neglect in its failure to file a timely answer and continued inaction in this matter. As outlined in the previous paragraph, CSEA idled as Triffin took steps to litigate this case in an expedient and efficient manner. CSEA has raised a number of defenses in this case regarding improper service, but never once has disputed that it was aware of this action before the May 20, 2013, default date. Its decision to file Miller's affidavit confirms that CSEA became aware of this action in June 2013, at the very latest. This court would have even found it reasonable if CSEA had experienced a month or two delay in filing its answer to Triffins' complaint as a result of its difficulty in identifying a New Jersey attorney to support Pomerance's pro hac vice application. While this reason advanced by CSEA might constitute evidence of an understandable reason for its initial failure to respond, CSEA's intermittent and untimely participation in this action instead indicates a lack of diligence and planning on behalf of CSEA. *See Mancini, supra,* 132 *N.J.* at 335, 625 *A.*2d 484. As a result, the court finds that CSEA has not shown excusable neglect.

The court also concludes that CSEA has failed to raise a meritorious defense to Triffin's complaint. There are two questions central to the court's analysis of the meritorious defense prong: First, is Triffin a holder in due course of the check? Second, what rights, if any, does Triffin have to enforce the check?

As outlined above, there are two ways by which a transferee can become a holder in due course. The first, memorialized in *N.J.S.A.* 12A:3–302, is clearly not applicable to Triffin in this instance. The statute requires the transferee accept the instrument "for value, in good faith, without notice that the instrument is overdue or has been dishonored[.]" Here, there is no dispute that Triffin purchased the check with full knowledge that the check had already been dishonored by Bank of America prior to his purchase of the check. In addition, the face of the check showed the check date and the "VOID AFTER 90 DAYS" stamp. It is thus clear that Triffin did not become a holder in due course under *N.J.S.A.* 12A:3–302.

The second way a transferee can become a holder in due course is under the shelter rule, codified in *N.J.S.A.* 12A:3–203(b) and thoroughly discussed by Judge Dreier in *Triffin v. Cigna Insurance Co.*, 297 *N.J.Super.* 199, 687 *A.*2d 1045 (App.Div.1997). The statute reads:

> Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

It is clear to this court that Triffin became a holder in due course of the check under the shelter rule when he purchased it as part of his transaction with Friendly on March 13, 2013. There is no objection raised by CSEA that Friendly became a holder in due course of the check upon its transfer from Christmas. It thus follows that Triffin assumed the same rights as Friendly vis-à-vis the check, which is the holder in due course of the instrument.

After establishing Triffin's status as a holder in due course of the check, the final remaining question concerns Triffin's

rights to enforce the check against CSEA. In its simplest terms, the issue is whether the words "VOID AFTER 90 DAYS" included on the check by CSEA operate to limit CSEA's liability under the check. This court finds support from nonbinding but persuasive authority, New Jersey statutes, and principles of equity to hold that Triffin may enforce The Check against CSEA despite the language included on the check.

In *Woods v. Bank of New York*, 806 *F*.2d 368, 373 (2d Cir.1986), the court determined a bank was not liable to a customer when it ignored an instruction a customer had written in the memorandum line on the bottom left corner of a check. It is also well settled that a bank has no liability to a drawer of a check if it accepts a stale check in good faith. *See U.C.C.* 4–404 (2012). It is instructive to this court that CSEA would be left without a remedy if, in this instance, Bank of America had decided to accept the check from Friendly.

As discussed above, both parties have cited to statutes which lend support to their positions. The court agrees with CSEA that *N.J.S.A.* 12A:3–414(b) controls its obligation concerning the check. The court disagrees, however, with CSEA's interpretation of the statute in relation to the check. CSEA fails to cite any authority beyond this statute in New Jersey's UCC which allows CSEA to unilaterally shorten the timeframe of its obligation to Christmas or subsequent holders in due course of the instrument. Moreover, this court finds that the "terms" of the unaccepted draft in the statute refer to the drawer, drawee, and amount of the draft, and do not refer to additional terms imposed on the draft by the drawer such as the ninety-day window of obligation CSEA seeks to enforce here. In fact, *N.J.S.A.* 12A:3–118(c) allows a party to bring an action for an unaccepted draft within three years of dishonor, or ten years after the date of draft, whichever period is shorter. This court reads these two statutes together to permit Triffin, the holder in due course, to successfully bring an action against CSEA, the drawer, for up to three years after the date of dishonor of the check. Triffin instituted this action well within the

required timeframe. CSEA is now obligated to acknowledge and pay its debt. Any other result in this matter would be akin to ruling that CSEA's obligation to Christmas for his child support overpayment is only valid for so long as CSEA sees fit and imposes on the instrument it sends to Christmas to satisfy its obligation. Such a ruling would not only be inherently unjust and inequitable, but would also render moot the statute of limitations imposed by the New Jersey Legislature for suits in this arena. As a result, this court finds that CSEA has failed to raise a meritorious defense to Triffin's complaint.

For the foregoing reasons, CSEA's motion to vacate default judgment is denied.

*CSEA's Motion to Dismiss Triffin's Complaint*

This court need not consider the merits of CSEA's motion to dismiss Triffin's complaint or, in the alternative, for summary judgment pursuant to *Rule* 4:6–2, while CSEA remains in default. As a result, CSEA's motion to dismiss Triffin's complaint or, in the alternative, for summary judgment, is denied.

*Triffin's Motion to Turnover Funds*

A motion for turnover of funds can only be granted if the motion is made subsequent to a valid judgment against a defendant. In accordance with this opinion, and for the reasons specifically stated above, this court declines to vacate the default judgment entered against CSEA. As a result, Triffin's motion to turnover funds, predicated on a writ of execution based on the default judgment, is granted. Triffin has filed the proofs required for the court to grant his turnover motion, namely the notice to debtor and certification of levy served by court officer Richard Genabith on CSEA and the certification of amount due. Triffin's motion for turnover of funds is, therefore, granted.

*Conclusion*

As discussed above, CSEA's motion to vacate the default judgment is denied. CSEA's motion to dismiss plaintiff's complaint

and, in the alternative, for summary judgment is denied. Triffin's
motion to turnover funds is granted.