**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2715-22

ROBERT J. TRIFFIN,

    Plaintiff-Appellant,

v.

KAISER A. PATHAN and
SHABANA PATHAN,

    Defendants-Respondents,

and

ANMOL SARFARAZ,
HARIS ZAMAN, and
AH786 CONTRACTORS, LLC,

    Defendants.

and

KAISER AND SHABANA
PATHAN,

    Third-Party
    Plaintiffs-Respondents,

v.
HARIS ZAMAN, AH786

CONTRACTORS, LLC,
ANMOL SARFARAZ ZAMAN,
a/k/a ANNA ZAMAN,
EDWARD BEACH and
CHECKS 2 CASH, INC.,

    Third-Party Defendants.

_____

Argued October 23, 2024 – Decided December 11, 2024

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. DC-000579-22.

Robert J. Triffin, appellant, argued the cause pro se.

Respondents have not filed a brief.

PER CURIAM

In this one-sided appeal, plaintiff Robert Triffin contests the trial court's March 6, 2023 order granting defendants Kaiser and Shabana Pathan's cross-motion for summary judgment and denying plaintiff's motion to compel discovery as moot. Based on our review of the record and the applicable legal principles, we vacate the order and remand for further proceedings consistent with this opinion.

I.

The Pathans contracted with defendant AH786 Contractors, LLC (AH786), which is owned and operated by defendants Anmol Sarfaraz and Haris Zaman, to perform construction on their home. On April 14, 2021, Zaman appeared at the Pathans' home with two workers to begin the project. The Pathans gave him a $12,000 check written to AH786 as an initial installment for the start of the home improvement work.[1] On that same day, Zaman cashed the check with third-party defendant Checks2Cash, Inc. in exchange for him transferring to Checks2Cash all rights to deposit the check.

The following day, Sarfaraz contacted the Pathans informing them that Zaman was not supposed to receive a check and urged them to contact their bank to stop payment on the check.[2] The Pathans notified their bank that AH786 took the check without intending to return to perform the work. Meanwhile, when Checks2Cash attempted to deposit the Pathans' check for payment, the check

---

[1] The Pathans previously gave AH786 a $1,000 check as an initial deposit. That check is not the subject of plaintiff's claim but is part of the Pathans' cross-claim against AH786.

[2] Zaman and Sarfaraz purportedly represented themselves to the Pathans as married and business partners during negotiations. However, Sarfaraz later acknowledged she and Zaman were separated and that Zaman would "run away with the money and not finish the work."

A-2715-22

was dishonored by the Pathans' bank. Third-party defendant Edward Beach, owner of Checks2Cash, contacted the Pathans demanding payment of the $12,000.

The check was subsequently returned to Checks2Cash with the notation: "This is a LEGAL COPY of your check. You can use it the same way you would use the original check." The check also stated the return reason as "ALTERED/FICTITIOUS." Thereafter, Checks2Cash assigned plaintiff all rights in the dishonored check through an assignment agreement.

In June 2022, plaintiff filed a complaint against the Pathans, Zaman, Sarfaraz, and AH786, seeking to hold them liable for the dishonored check and other fees associated with the stopped payment on the check. The Pathans filed an answer denying all claims and raising affirmative defenses. The Pathans claimed Zaman and Sarfaraz engaged in a fraudulent check cashing scheme and that AH786 took the $12,000 deposit and never performed the work. Furthermore, the Pathans filed a third-party complaint against Edward Beach and Checks2Cash. The Pathans claimed third-party defendants colluded with Sarfaraz and Zaman in a fraudulent check cashing scheme.

In November 2022, plaintiff served a request for production of documents on the Pathans. Plaintiff asserts the Pathans' responses were insufficient. In

4

December 2022, plaintiff moved to compel the Pathans to comply with his request. In January 2023, the Pathans cross-moved for summary judgment seeking to dismiss plaintiff's complaint with prejudice.

The Pathans argued that Checks2Cash cannot be a holder in due course of the check because it cashed the check in violation of the Check Cashers Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52. Specifically, the Pathans asserted Checks2Cash did not comply with AH786's corporate resolution requiring "all members" of the company to be present when cashing the check because Sarfaraz was not present at the time Zaman cashed the check with Checks2Cash. Consequently, the Pathans claim plaintiff does not qualify as a holder in due course and cannot collect payment from them. The Pathans further argue plaintiff is not a holder in due course because plaintiff knew he was assigned a dishonored check.

Plaintiff opposed the Pathans' cross-motion for summary judgment. He acknowledged Checks2Cash "assigned all its rights to [him] in the Pathan[s'] . . . dishonored check," and that he seeks to enforce the dishonored check against them pursuant to N.J.S.A. 12A:3-414. Plaintiff further asserted "there is no legally admissible evidence in the record that shows the material facts in this

A-2715-22

action are not in dispute," and thus, the cross-motion for summary judgment should be denied.

On March 6, 2023, the trial court granted the Pathans' cross-motion for summary judgment dismissing plaintiff's complaint with prejudice and denied plaintiff's motion to compel discovery as moot. The court noted that "[w]hile there is a genuine issue of material fact as to whether there was fraud or illegality affecting the dishonored check, plaintiff does not satisfy the requirements to establish he is a holder in due course pursuant to N.J.S.A. 12A:3-302(a)(2) because [he] acknowledge[d] he was assigned the dishonored check."

Specifically, the court concluded plaintiff is not a holder in due course because he failed to establish the second prong of the two-prong test under the statute. Plaintiff apparently acknowledged at oral argument he knew the check he purchased from Checks2Cash was dishonored at the time of assignment and indicated he intended to pursue a breach of contract claim.[3] Based on plaintiff's knowledge of the dishonored check, the court found he was precluded from pursuing a breach of contract claim to recover funds from the Pathans.

---

[3] The transcript from oral argument was not provided to the court by plaintiff. We were also not able to obtain the transcript through the clerk's office.

The court also denied plaintiff's motion to compel discovery finding that although plaintiff indicated discovery remained outstanding, he had not shown that "outstanding discovery [would] create any issues of genuine fact to preclude this court from finding in [the Pathans'] favor" due to the undisputed fact that "the check was dishonored at the time of plaintiff's purchase."

II.

On appeal, plaintiff contends the trial court erred in granting summary judgment based on its finding that plaintiff knew the Pathans' check had been dishonored when it was assigned to him. Plaintiff asserts the court should have addressed whether there was any proof in the record that Checks2Cash had knowledge of the Pathans' defenses to repayment of their dishonored check. He further asserts the court erred in failing to afford him the drawer's warranty under N.J.S.A. 12A:3-414.

A trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the

7

motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On appeal, we employ the same summary judgment standard. Townsend v. Pierre, 221 N.J. 36, 59 (2015). If there is no factual dispute, and only a legal issue to resolve, the standard of review is de novo and the trial court rulings "are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff argues the trial court erred in finding he was not entitled to the status and rights of a holder in due course because the court determined that Checks2Cash knew, or had reason to know, the Pathans' check had been dishonored at the time it obtained rights in the check. Additionally, he asserts the court erred in dismissing his claim based on the fact that he knew the check had been dishonored when he purchased it from Checks2Cash.

Persons entitled to enforce an instrument include "the holder of the instrument, [or] a nonholder in possession of the instrument who has the rights of a holder." N.J.S.A. 12A:3-301. Under the New Jersey Uniform Commercial Code, N.J.S.A. 12A:3-302(a)(2), a "holder in due course" is defined "as one who takes an instrument for value, in good faith, and without notice of dishonor or

8

any defense against or claim to it on the part of any person." Triffin v. Quality Urb. Hous. Partners, 352 N.J. Super. 538, 541 (App. Div. 1997).

Here, "[p]laintiff is in the business of purchasing dishonored checks and taking assignments from the sellers by which he seeks to recover as holder in due course from banks and others in the collection process." Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 241 (App. Div. 2007). As the trial court correctly noted, plaintiff himself could not be a holder in due course under N.J.S.A. 12A:3-302(a)(2) because he clearly knew the check was dishonored at the time he purchased it.

However, plaintiff never claimed to be a holder in due course under N.J.S.A. 12A:3-302(a)(2). Specifically, in his complaint, plaintiff asserts, "as a matter of assignment law, [he has] the legal status of a holder in due course" and cites to Triffin v. Cigna Insurance Co., 297 N.J. Super. 199 (App. Div. 1997).

According to Cigna Ins. Co., N.J.S.A. 12A:3-203(b) provides "a second method by which [plaintiff] may become a holder in due course." Id. at 201. Under the statute, transferring an instrument enables the transferee to become the holder of an instrument and "vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." N.J.S.A. 12A:3-203(b). The relevant inquiry here is whether Checks2Cash took

the Pathans' check as a holder in due course. The underlying policy is to assure the holder in due course a free market for the instrument. Uniform Commercial Code cmt. 2 on N.J.S.A. 12A:3-203. Nevertheless, "the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." N.J.S.A. 12A:3-203(b).

Moreover, plaintiff asserts an enforcement claim to collect payment against defendants based on N.J.S.A. 12A:3-414(b) and contends Checks2Cash assigned him its right to enforce the dishonored check. Under N.J.S.A. 12A:3-414(b), the person who signed a dishonored check is "obliged to pay the draft according to its terms at the time it was issued," and that "obligation is owed to a person entitled to enforce the draft." This statute is to be read in conjunction with N.J.S.A. 12A:3-308(b), which entitles a plaintiff producing a dishonored check to payment, unless the defendant establishes a defense or claim in recoupment.

Here, if Checks2Cash was a holder in due course, plaintiff would "acquire[] the same status by the assignment under the shelter provision [of N.J.S.A. 12A:3-203(b)]." Triffin v. Ameripay, LLC, 368 N.J. Super. 587, 591 (App. Div. 2004). Indeed, in plaintiff's opposition to summary judgment, he

states Checks2Cash assigned its rights in the Pathans' dishonored check, and now he seeks to bring an enforcement action under N.J.S.A. 12A:3-414 as the assignee of Checks2Cash's rights in the dishonored check. Likewise, plaintiff argues on appeal that he has the status and rights of a holder in due course by virtue of the assignment of the check from Checks2Cash.

Specifically, if Checks2Cash was a holder in due course, its right to bring an N.J.S.A. 12A:3-414(b) enforcement action against defendants would have transferred to plaintiff upon assignment of the check, pursuant to N.J.S.A. 12A:3-203(b). Plaintiff would then be entitled to enforce the dishonored check against defendants as assignee and thus be entitled to payment under N.J.S.A. 12A:3-308(b). Accordingly, as discussed more fully below, the only issue germane to this appeal is whether Checks2Cash was a holder in due course at the time it purchased the Pathans' check from AH786.

Plaintiff must show a genuine issue of material fact exists regarding Checks2Cash taking the check as a holder in due course. Evidently, however, the trial court only focused on plaintiff's inability to be a holder in due course and failed to consider the disputed fact of whether Checks2Cash was a holder in due course when it initially cashed the check from AH786.

11

A holder in due course must take an instrument "for value, in good faith, without notice that the instrument . . . has been dishonored . . . without notice of any claim to the instrument . . . and without notice that any party has a defense or claim in recoupment described in [N.J.S.A. 12A:3-305(a)]." N.J.S.A. 12A:3-302(a)(2). The right of a holder in due course to enforce the obligation of payment of a check is subject to the obligor's defenses of fraud in the inducement and illegality of the transaction. N.J.S.A. 12A:3-305(a)(1), (b).

Furthermore, "a holder in due course has the right to assign any claim he has against the maker following the dishonor of the instrument and irrespective of the assignee's notice of the dishonor." Quality Urb. Hous. Partners, 352 N.J. Super. at 542. In fact, when purchasing a dishonored instrument, the purchaser's knowledge of the instrument at the time of the assignment is irrelevant. Triffin v. Pomerantz Staffing Servs., LLC, 370 N.J. Super. 301, 310 n.4 (App. Div. 2004). As the assignee of the assignor's cause of action, the purchaser stands in the assignor's shoes, and the assignor's status at the time it negotiated the check determines the purchaser's claim. Ibid.

Therefore, the assignee of a holder in due course is "entitled to the holder's right to enforce the check against the issuer, even though [the assignee] purchased the check with knowledge of its dishonor." Ameripay, LLC, 368 N.J.

Super. at 594 (citing Cigna Ins. Co., 297 N.J. Super. at 202-03). In an enforcement action based on N.J.S.A. 12A:3-414(b), the issuer of a dishonored check "is obligated to make payment to a person entitled to enforce the check," and "the assignee of a holder in due course to the dishonored checks . . . is entitled to enforce the instruments against the maker." Id. at 592 (citing N.J.S.A. 12A:3-414(b); N.J.S.A. 12A:3-301; N.J.S.A. 12A:3-308(b)).

To prevail against the Pathans in asserting Checks2Cash's claim against them, plaintiff must prove two facts: that Checks2Cash was a holder in due course at the time it paid on the instrument and that Checks2Cash's assignment to plaintiff was valid. See Quality Urb. Hous. Partners, 352 N.J. Super. at 542. Accordingly, if Checks2Cash was a holder in due course and then validly assigned plaintiff its rights in the check, plaintiff could pursue the enforcement claim of a holder in due course. Automatic Data Processing, Inc., 394 N.J. Super. at 247 (citing N.J.S.A. 12A:3-305(b)).[4]

In Triffin v. Liccardi Ford, Inc., 417 N.J. Super. 453, 457 (App. Div. 2011), we noted that if the check cashing company from which the plaintiff bought the check was a holder in due course when it initially obtained the check from the payee, it could assign its interest in the check to the plaintiff, who then

---

[4] There is no dispute that plaintiff had a valid assignment from Checks2Cash.

could enforce the check cashing company's rights as its assignee. See also Quality Urb. Hous. Partners, 352 N.J. Super. at 542. However, in Liccardi Ford, we established that in order to take an instrument in good faith and qualify as a holder in due course under N.J.S.A. 12A:3-302(a), the assignor check cashing company must adhere to "reasonable commercial standards" outlined in the Check Cashers Regulatory Act. 417 N.J. Super. at 460.

In essence, a check cashing company that takes a check in violation of the Act would be precluded from taking as a holder in due course. Id. at 455, 460. As a result, a subsequent assignment of the check would not confer upon the assignee the enforcement rights of a holder in due course, which subjects them to the check issuer's personal defenses. Id. at 457, 460-61.

Here, the trial court never "address[ed] the validity of the assignment at all, having focused primarily on plaintiff's status as a holder of the check rather than as the assignee of the claim of a holder in due course." Quality Urb. Hous. Partners, 352 N.J. Super. at 543. Instead, the court granted summary judgment and barred plaintiff's enforcement claim, finding he could not be a holder in due course based on his pre-existing knowledge of the dishonored check. However, as stated in Quality Urban Housing Partners, the relevant determination is whether Checks2Cash—not plaintiff—was a holder in due course because

finding in the affirmative entitles plaintiff to assert Check2Cash's holder in due course rights as assignee of its enforcement action against the Pathans.

Notably, before the trial court, the parties disputed Checks2Cash's status as a holder in due course. Plaintiff's appeal concerns Checks2Cash's holder in due course rights and, by extension, his right to assert its claim as an assignee. Specifically, plaintiff argues the trial court erred in finding he was not entitled to the rights of a holder in due course because the judge "mistakenly assumed" Checks2Cash had knowledge of the check's dishonor, which would violate the requirement to take the check "without notice of dishonor" under N.J.S.A. 12A:3-302(a)(2). However, the trial court never addressed Checks2Cash's knowledge of the check's dishonor or alleged violation of the Act. Absent these determinations, it is not clear whether Checks2Cash was a holder in due course of the Pathans' check.

We further note the trial court's reliance on Triffin v. TD Banknorth, N.A., 190 N.J. 326, 329 (2007), was misplaced. The cause of action in TD Banknorth was distinct from a claim under N.J.S.A. 12A:3-414. The TD Banknorth Court noted that an assignee of rights and interests in a dishonored check may not enforce statutory liability created by N.J.S.A. 12A:4-302 because the Legislature intended that statute to benefit "only the payee, collecting banks,

15

and others who may have received the check before dishonor." TD Banknorth, 190 N.J. at 328. Particularly, after a bank untimely returns a check, the assignee, having full knowledge of its dishonor, has neither a vested right nor interest in payment because the nature of the action based on the midnight deadline rule[5] is "a cause of action for a breach of statutory duty, not an action for collection of a negotiable instrument." Id. at 329 (quoting Triffin v. Bridge View Bank, 330 N.J. Super. 473, 478 (App. Div. 2000)). The Court noted that N.J.S.A. 2A:25-1, which permits the assignment of "all choses in actions arising on contract," was inapplicable in a cause of action pursued under the midnight deadline rule because it was not based on contractual right and therefore, was not assignable. Ibid.

Here, the holding in TD Banknorth is inapplicable because plaintiff seeks to enforce an instrument as the assignee of a holder in due course's claim rather than seeking to enforce statutory liability as the transferee of a statutory cause of action. TD Banknorth merely precluded an assignee, who had knowledge of a check's dishonor at the time of assignment, from asserting a claim under

---

[5] The "midnight deadline rule" states that a bank is strictly liable for the amount of a check if it retains the check beyond midnight of the following banking day on which it received the check without either paying it or returning it as dishonored. N.J.S.A. 12A:4-104; N.J.S.A. 12A:4-301.

N.J.S.A. 12A:4-302 because they would not fall within the purview of the statute's protection, and rights to a statutory cause of action are not assignable. Id. at 328-29. The assignee effectively lacked standing to enforce statutory liability created under the midnight deadline rule against a payor bank.

We conclude that when viewing the evidence in a light most favorable to plaintiff, there were issues of material fact that precluded the entry of summary judgment. The court itself recognized "there is a genuine issue of material fact as to whether there was fraud or illegality affecting the dishonored check." Therefore, we reverse the order granting summary judgment and remand to the court for further proceedings.

In addition, we vacate the court's order denying plaintiff's motion to compel discovery. On remand, the court should consider the request on its merits, particularly plaintiff's request for documents the Pathans relied upon in asserting their third-party complaint regarding their defense that Checks2Cash worked with the owners of AH786 to defraud them, and documents establishing Checks2Cash improperly cashed the check issued to AH786. These documents are germane to the underlying dispute as to whether Checks2Cash was a holder in due course.

A-2715-22

The trial court shall provide the parties a reasonable period of time to complete discovery prior to further motion practice or trial. Our decision remanding this matter shall not be construed as an expression of an opinion on the merits of plaintiff's claim or defendants' defenses.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                    A-2715-22